In the Matter of HANS ANDRESEN, JR., Appellant, against WILLIAM G. RICE et al., as the Civil Service Commission of the State of New York et al., Respondents.

Argued January 13, 1938;  decided March 8, 1938.

*Joseph F. Ryan* and *Abraham Bernard King* for appellant. The petitioner, as a person within the required age limits and as a citizen and resident, has a sufficient interest in the subject-matter of the proceeding and has a legal right to sue for the relief sought. (*Matter of Blust* v. *Collier*, 62 App. Div. 478; *People ex rel. Frost* v. *N. Y. C. & H. R. R. R. Co.*, 168 N. Y. 187; *Matter of People ex rel. Foot* v. *Gross*, 137 App. Div. 77; *People* v. *Halsey*, 37 N. Y. 344; *People ex rel. Daley* v. *Rice*, 129 N. Y. 451; *Baird* v. *Supervisors*, 138 N. Y. 95; *Matter of McCabe* v. *Voorhis*, 243 N. Y. 401; *People ex rel. O'Brien* v. *Van Wyck*, 27 Misc. Rep. 439; *People ex rel. Boltzer* v. *Daley*, 37 Hun, 461; *Matter of Friedman* v. *Finegan*, 268 N. Y. 93; *Chittenden* v. *Wurster*, 152 N. Y. 345; *Kornbluth* v. *Rice*, 250 App. Div. 654; 275 N. Y. 597; *Palmer* v. *Board of Education*, 276 N. Y. 222; *Matter of Carow* v. *Board of Education*, 272 N. Y. 341; *Matter of Scahill* v. *Drzewucki*, 269 N. Y. 343.) The position of trooper in the Division of State Police is in the classified service of the State. (*Friedman* v. *Finegan*, 268 N. Y. 93; *People ex rel. McClelland* v. *Roberts*, 148 N. Y. 360.) The position of trooper is one for which competitive examination is practicable to test merit and fitness. (*Matter of Hammond* v. *Ricker*, 140 App. Div. 19; *Chittenden* v. *Wurster*, 152 N. Y. 345; *Matter of Ottinger* v. *Civil Service Comm.*, 240 N. Y. 435; *Matter of Simons* v. *McGuire*, 204 N. Y. 253; *Matter of Carow* v. *Board of Education*, 272 N. Y. 341; *Palmer* v. *Board of Education*, 276 N. Y. 222; *Matter of O'Keefe* v.

*Clark*, 238 App. Div. 175.) The Superintendent has no power to conduct the examination for troopers. Even if the power be conceded, the examination as conducted by him does not comply with the requirements of the Civil Service Law (Cons. Laws, ch. 7). (*Matter of Ottinger* v. *Civil Service Comm.*, 240 N. Y. 435; *Chittenden* v. *Wurster*, 152 N. Y. 345.)

*John J. Bennett, Jr., Attorney-General* (*Patrick H. Clune* and *Henry Epstein* of counsel), for respondents. The petitioner has no standing to warrant the relief sought. (*Kornbluth* v. *Rice*, 250 App. Div. 654; 275 N. Y. 597; *People ex rel. McLaughlin* v. *Police Commrs.*, 174 N. Y. 450; *Matter of Burr* v. *Voorhis*, 229 N. Y. 382; *Matter of Colonial Beacon Oil Co.* v. *Finn*, 245 App. Div. 459; *Matter of Stubbe* v. *Adamson*, 173 App. Div. 305; 220 N. Y. 459.) Chapter 161 of the Laws of 1917, which added article 9-A to the Executive Law (Cons. Laws, ch. 18), is clearly constitutional. (*Schieffelin* v. *Goldsmith*, 253 N. Y. 243; *Gardner* v. *Ginther*, 232 App. Div. 296; *Missouri Pacific R. R. Co.* v. *Norwood*, 283 U. S. 249.) The position of State trooper is in the unclassified class of the civil service of the State. (*Matter of Ottinger* v. *Civil Service Comm.*, 240 N. Y. 435.) The Division of State Police is not subject to the jurisdiction of the Civil Service Commission and is not subject to the Civil Service Law, rules and regulations. (*LaRocco* v. *Flynn*, 257 N. Y. 5; *Smiley* v. *Holm*, 285 U. S. 355.)

CRANE, Ch. J. In every civil service case we must start with the provision of the State Constitution (Art. V, § 6), which cannot be repeated too often, as it is the groundwork upon which all legislation on the subject is built. It steers the course which the Legislature must follow: " Appointments and promotions in the civil service of the State, and of all the civil divisions thereof, including cities and villages, shall be made according to merit and fitness to be ascertained, so far as practicable, by examinations, which, so far as practicable, shall be com-

petitive. * * * Laws shall be made to provide for the enforcement of this section." The Civil Service Law (Laws of 1909, ch. 15, Cons. Laws, ch. 7) was passed to carry out this provision of the Constitution of 1894, and which is now section 6 of article V of the Constitution.

The service of the State is classified by the Civil Service Law in section 9, which reads: " The civil service of the state and of each of its civil divisions and cities shall be divided into the unclassified service and the classified service. The unclassified service shall comprise all elective officers, all offices filled by election or appointment by the legislature on joint ballot; all persons appointed by name in any statute; all legislative officers and employees, all offices filled by appointment by the governor, either upon or without confirmation by the senate, except officers and employees in the executive offices; all persons appointed by the secretary of state subject to the approval of the governor; all elections officers, the head or heads of any department of the governorment, all persons employed in or who seek to enter the public service as superintendents, principals or teachers in a public school or academy or in a state normal school or college * * *. The classified service shall comprise all positions not included in the unclassified service."

The State police, provided for by article 9-A of the Executive Law (Cons. Laws, ch. 18), are not in the unclassified service, but are in the classified. The classified service is divided into four classes, the exempt class, the competitive class, the non-competitive class and, in cities, the labor class. The State police have not been put in the exempt class, nor are they in the labor class. They, therefore, fall within either the competitive class or the non-competitive class, according to section 13 of the Civil Service Law. Subdivision 4 of that section enacts that there may be included in the exempt class all subordinate offices for the filling of which competitive or non-competitive examinations may be found to be not practicable, but that no office or position shall be deemed to be within the

exempt class unless it is specifically named in such class in the rules, and the reasons for such exemption stated separately in the annual reports of the Commission. Appointments in the exempt class shall be made without examination. So much for the Constitution and the Civil Service Law passed in accordance with it.

The fundamental purpose running through our civil service provisions is that, so far as practicable, positions in the State service shall be filled by competitive examinations. Non-competitive appointments are the exception and not the rule. (*Matter of Barthelmess* v. *Cukor*, 231 N. Y. 435.) The Legislature, in the unclassified service, has placed those offices for which it is apparent that civil service examinations could not be held. Even here the Legislature has not unlimited power, and could not place in the unclassified service those positions for which it was quite apparent competitive examinations could be held. (*Matter of Carow* v. *Board of Education*, 272 N. Y. 341; *Matter of Ottinger* v. *Civil Service Comm.*, 240 N. Y. 435; *Hale* v. *Worstell*, 185 N. Y. 247.) As stated in the *Ottinger* case, the Civil Service Law may not cover all positions which have been or are to be created; neither is the competitive examination which may be required by the Constitution limited solely to those of the Civil Service Commission provided by the Legislature. In other words, the latter body is always free so long as it carries out the spirit of the Constitution, to provide examinations or competitive examinations by others than the Civil Service Commission. Thus, in the case cited, we said, through Judge CARDOZO: " The Legislature in obedience to that command [Constitution] has enacted the Civil Service Law. We have no thought to suggest that with the enactment of that law its power was exhausted. It may adopt some other agency, and even classify for itself, if its classification can reasonably be regarded as a genuine endeavor to extend the constitutional test to the limit of the practicable (*People ex rel. Schau* v. *McWilliams*, 185 N. Y. 92, 99;

*Matter of Barthelmess* v. *Cukor*, 231 N. Y. 435, 443).
What that limit is, may not be determined as an abstraction, or irrespective of experience. The very fact that there exists and has long existed a commission dealing with exemptions in the setting of the concrete instance, is something not to be ignored when a whole bureau or department is declared exempt in gross. The Legislature retains the power of selection among means appropriate to the end, but choice must rest upon reason, and not upon caprice. To know the limit of the practicable, we must give heed to methods and institutions that are functioning in practice " (p. 440).

In providing for the State police in article 9-A of the Executive Law the Legislature has in effect provided for the appointment of members of the force by the Superintendent without competitive examinations. The Superintendent is directed to make rules and regulations and the applicant must pass a physical and mental examination based upon standards provided by these rules and regulations. (§ 94, subd. 2.) It may be well to quote this provision: " No person shall be appointed to the state police force unless he shall be a citizen of the United States, between the ages of twenty-one and forty years, able to ride, of sound constitution and good moral character, nor until he shall have passed a physical and mental examination based upon standards provided by the rules and regulations of the superintendent. Appointment and reappointment to the force shall be for a term of two years."

In the little pamphlet published by the Executive Department, and submitted on the argument, we find this to be stated as part of the regulations:

" The physical examination is conducted by the division surgeon inspector, assisted by a necessary number of physicians. Successful applicants in the physical examination are required to take a written intelligence test.

" An oral board consisting of the superintendent and certain of his staff officers then examine each candidate

individually for the purpose of ascertaining ability to reason, judgment, quality of language, attention to detail, self reliance, appearance and manner. Upon each of these points, he is marked on a comparative scale.

" An eligible list of successful candidates is then established in order of individual rating."

There is no claim that these examinations are competitive or that the examinations are reduced to writing where possible, so a check can be made upon the rating given. The Superintendent and his staff make the examinations and appoint from the list established according to their own good judgment. The respondent here does not claim that these examinations are competitive in the sense that other police officers are given competitive examinations in the cities of our State. The appointing power holds the examination and makes the choice, which, of course, in good faith he thinks should be made. There is much to be said for this method of selection, and the results, as we know, have probably been good, but the question still remains: Is it in accordance with the Executive Law as passed by the Legislature, and if it is, is that law constitutional?

While the Executive Law from which I have quoted says that the Superintendent shall make rules and regulations according to which a physical and mental examination shall be conducted, it does not state that he shall conduct the examination. I am inclined to think, however, that this was intended. If this were not so something would have been said in this article about the Civil Service Commission or the Civil Service Law. In fact, the respondent here claims that *no* examinations are really required or necessary, as the Legislature, in passing article 9-A of the Executive Law, really intended to place the State police in the unclassified service. Even if this were done it might not answer the requirements of the Constitution. _(Matter of Carow v. Board

*of Education*, 272 N. Y. 341.) The question would still remain whether the Legislature had determined that it was impracticable to hold competitive examinations for the State police and whether or not its determination was arbitrary.

This appeal, therefore, comes to us with these propositions: The Legislature, having provided for the appointment of State police by the Superintendent without competitive examinations, has it extended the unclassified service of section 9 of the Civil Service Law by including State police, and, if so, is this act constitutional?

The duties of the State police, as specified in this article of the Executive Law, are none other than those performed by the police in the city of New York and other large cities of the State. We are not referred to any particular duty which does not pertain to other large police forces. The State police covers a larger territory, and State property, but their duties are the same under our criminal and penal laws as are those of any other police officer, yet, as we know, competitive examinations are found practicable for the police force in every city within this State, including the city of New York. But we do not stop here. While we recognize that competitive examinations are thus practicable for local police forces, we find in section 99 of this Executive Law that the employment of State police may be extended to towns, villages and police districts of the State — small units of the State — where heretofore examinations of a competitive nature have been required for their police staffs. In other words, under this law, the larger part of the police force of the State, towns and villages, if not the whole force, in time could be placed under the State Superintendent of Police, and appointed by him in his discretion according to his own rules and standards. Such was not the purpose and intent of the Constitution, because experience has taught us, at least by the examples

of the past, that for such positions competitive examinations are practicable. Within the ruling laid down in *Matter of Ottinger* v. *Civil Service Commission,* cited above, the Legislature has sought to place the whole State police force in the non-competitive or unclassified service, exempting them all from competitive examinations and leaving their selection to the Superintendent of Police according to such rules and regulations as he may adopt. This wholesale classification *en masse* of an entire force, in view of past experience with such offices and positions, is contrary to the Constitution.

In coming to this conclusion we wish to have it fully understood that there is no criticism whatever of this method as a method for the selection of fine State officers; neither any criticism of what the Superintendent has done, for he certainly has furnished the State with an efficient body of men. Neither is it any reflection upon the wisdom of the Legislature in trying to provide the best protection that the State can afford against wrongdoers. It is not for us, however, to pass upon the best methods of selection or the wisdom of legislation. We have a Constitution, which I have quoted, and we, like everybody else, are bound to follow it. In interpreting that Constitution in the light of the decisions, experience and the practices formed under it, we simply state our conclusion to be that the Legislature cannot pass to the Superintendent of Police the appointment of his entire force without some competitive examination open to all according to requirements provided in advance. As before stated, this does not mean that the examination must be conducted under the Civil Service Law or by the Civil Service Commission. It may be conducted by anybody — by the Superintendent or his staff — but the examination must include the competitive element as long as experience teaches us that it is practicable to get capable policemen by this method. Nothing has been given to us to show wherein such examinations are impracticable.

The fact of two years' service instead of a longer term does not affect this result, for there is always the power of reappointment for an unlimited time by the Superintendent.

The point has been raised that the petitioner here is not capable of presenting this matter to the court, as he has not applied for a position on the force. He is of age to make such application, but, more than that, he is a citizen and resident of the State of New York, and, being such, is capable of presenting to the courts his petition for the enforcement by officials of their mandatory duties. (*Matter of Social I. E. Assn.* v. *Taylor*, 268 N. Y. 233; *Matter of Kornbluth* v. *Rice*, 250 App. Div. 654; affd., 275 N. Y. 597; *People ex rel. Schau* v. *McWilliams*, 185 N. Y. 92; *Matter of Baird* v. *Bd. of Supervisors*, 138 N. Y. 95, 116; *Matter of McCabe* v. *Voorhis*, 243 N. Y. 401, 411; *Matter of Friedman* v. *Finegan*, 268 N. Y. 93, 97. See, also, our recent cases on the intent and purpose of the Constitution: *Palmer* v. *Bd. of Education*, 276 N. Y. 222; *Matter of Carow* v. *Bd. of Education*, 272 N. Y. 341; *Matter of Scahill* v. *Drzewucki*, 269 N. Y. 343, and also *Chittenden* v. *Wurster*, 152 N. Y. 345.)

Competitive examinations, we conclude, are, so far as this record shows, and in the light of experience, practicable for the appointment and promotion of the State police. As those examinations are conducted throughout the State for the city police officials under Civil Service rules and regulations, some such competitive examination may be given by the Superintendent of the State Police. The Legislature has clothed him with the authority of not only making the appointments, but we believe it was the intent also to clothe him with the power of conducting examinations. The competitive examination may be held by him or his staff, which shall be open to all meeting the required standards. As the result of these examinations, lists may be prepared from which appointments may be made. It is not necessary

that all of the examination be in writing. As stated in *Matter of Sloat* v. *Bd. of Examiners* (274 N. Y. 367), there may be other examinations besides the written part, provided the results of the examinations are so stated that the applicant may be able to check up the conclusions by some objective comparison. (*Matter of Fink* v. *Finegan*, 270 N. Y. 356; 275 N. Y. 591.) In other words, the competitive, oral and physical examinations must be according to standards making the competition fair to all.

The petitioner has evidently been at a loss to know his remedy. He has asked for too much. Under the opinions of Attorney-Generals, the Superintendent has been appointing officers without competitive examination. We grant the relief prayed for to the extent of holding that the Superintendent must discontinue this practice and hereafter make his appointments from lists prepared after a competitive examination.

This decision does not affect or disturb the officers in the positions they are now holding, as time must be given to the Superintendent to carry out the purposes of the Civil Service Law, as we have expressed it, without disrupting and disorganizing his staff. At such time and under such rules and regulations as he may adopt pursuant to this Executive Law, he can and will provide for examinations, giving due regard to experience and service in his ratings. (See *Matter of Kraus* v. *Singstad*, 275 N. Y. 302, 310.) Mandamus is an extraordinary remedy, and its issuance is to a great extent discretionary. The courts will be chary to issue it so as to cause disorder and confusion in public affairs, even though there may be a strict legal right. (*Duncan Townsite Co.* v. *Lane*, 245 U. S. 308, 311; *Matter of Warehousemen's Association* v. *Cosgrove*, 241 N. Y. 580; *Matter of Smidt* v. *McKee*, 262 N. Y. 373, 378.) Besides, we cannot tell from this record but that previous appointments may have been legally made, as the amendments to the Executive Law have in the process of time changed the facts and the law

applicable thereto. (See *Matter of Sandford* v. *Finegan*, 276 N. Y. 70, 73.)

The orders below should be modified to conform with this opinion, and as so modified affirmed, without costs.

LOUGHRAN, FINCH and RIPPEY, JJ., concur; LEHMAN and O'BRIEN, JJ., dissent; HUBBS, J., taking no part.

Ordered accordingly.