In the Matter of THEODORE W. DE LUCA, Petitioner, against JOHN A. GAFFNEY, as Superintendent of New York State Troopers, Division of State Police, Respondent.

Supreme Court, Special Term, Albany County, January 28, 1953.

*Bannigan & Zirin* for petitioner.

*Nathaniel L. Goldstein, Attorney-General* (*Wendell P. Brown* and *Herman N. Harcourt* of counsel), for respondent.

BOOKSTEIN, J. The State Troopers are an organization in the Executive Department of this State, created and existing under the Executive Law, and subject to its provisions. (Executive Law, art. 11.) By subdivision 2 of section 215 of that law, it is provided, in part, that: " The superintendent shall make rules and regulations subject to approval by the governor for the discipline and control of the force and for the examination

and qualifications of applicants for appointment thereto and such examination shall be held and conducted by the superintendent subject to such rules and regulations ".

In *Matter of Andresen* v. *Rice* (277 N. Y. 271, 277) the Court of Appeals said: " In providing for the State police in article 9-A " (one of the sources of present article 11) " of the Executive Law the Legislature has in effect provided for the appointment of members of the force by the Superintendent without competitive examinations ". And, in that case, that court held that " This wholesale classification *en masse* of an entire force, [as exempt from competitive examination] * * * is contrary to the Constitution ". (*Matter of Andresen* v. *Rice, supra,* p. 280.) The constitutional provision with reference to competitive examinations for original appointments applies with equal force to promotions.

The *Andresen* case (*supra*) was decided March 8, 1938. Thereafter, and on May 11, 1938, and in an obvious attempt to comply with the decision in the *Andresen* case, and under the authority of present section 215 of the Executive Law, the then Superintendent of Police promulgated rules for service record ratings to be submitted by troop commanders for each eligible candidate for competitive promotion examinations, which rules were approved by the then Governor on June 7, 1938.

On or about November 15, 1951, notice was issued by the Superintendent of Police of a competitive promotion examination for promotion to the position of corporal, such examination to be held on December 18, 1951. The notice provided for a written examination to which was assigned a relative weight of 4 and a service record rating to be submitted by the candidate's immediate troop commander, in accordance with order of May 11, 1938, heretofore referred to. A relative weight of 6 was assigned to the service record rating.

So far as appears, prior to the examination, no protest was lodged, by petitioner or anyone else against, or objection raised, to the relative weights assigned in the notice of examination. Petitioner and all other candidates entered the examination, with full knowledge of the relative weights assigned.

The aforesaid order of May 11, 1938, also provided that the service record ratings of each candidate are to be forwarded *under seal,* to the Superintendent of State Police by the troop commander of each candidate not later than ten days prior to the date of the announced competitive promotion examination and that such ratings are not to be opened until complete ratings

have been established for the written part of the examination. Thus the Superintendent of State Police, the person conducting the examination, has no knowledge of the service record rating of a candidate until after complete ratings have been made of the written part of the examination.

Petitioner passed the written part of the examination with a marking of 90.80% to which was given a weight of 4, resulting in a net mark of 36.32. His service record rating was 74% to which was given a weight of 6 or 44.40. The combined result was 80.72 to which was added a veteran's preference of 2.50 for a final total of 83.22 and as a result of such final rating, he was placed twenty-second on the eligible list.

Petitioner quarrels with the service record rating, as arbitrary and unlawful and seeks in this proceeding a review of the acts of respondent in the rendition of the service record rating. Actually, respondent took no part in the rendition of the service record rating. That record was the act of petitioner's immediate troop commander, who alone made it and transmitted it to respondent, under seal, not to be opened by him until after the ratings of the written examination. There is no act of the respondent in the rendition of the service record rating, which can be reviewed. The act was that of one other than respondent, viz., petitioner's troop commander, who is not a party to this proceeding and in reality it is his act which is sought to be reviewed.

Petitioner raises another objection to the examination and the final ratings therein, i.e., that giving a relative weight of 6 to the service record rating and of 4 to the written examination, results in the failure to have a competitive examination as required by section 6 of article V of the State Constitution, as interpreted, with reference to the State Police by the Court of Appeals in *Matter of Andresen* v. *Rice* (*supra*).

The tenor of that decision, as I apprehend it, is that appointments and promotions to the State Police cannot be made without some competitive examination, as otherwise there would always be present the element of appointment by caprice, or through favor or friendship, or for political considerations, *without regard to merit,* and that such results were sought to be obviated by the constitutional provisions relating to the civil service and by the statutes enacted to implement such provisions. The precise nature of such examination was not prescribed by that decision. Nor did it limit such examination to written ones. As stated by the court, at page 280, " the examination

must include the competitive element as long as experience teaches us that it is practicable to get capable policemen by this method ".

In the instant case, unlike the situation which existed in *Matter of Andresen* v. *Rice* (*supra*), we do have a written competitive examination. In addition, there is competition between the applicants at all times for a service record rating, which will stand them in good stead in a final total rating on their promotion examinations.

" Service [military service] so considered does not override the results of the competitive examination, but enters into the results as a contributory factor. A different situation arises when service controls selection irrespective of qualifying value. It is the difference between an appraisal of merit, an estimate of fitness, and a preference or bonus. The Constitution circumscribes the field of privilege and favor." (*Matter of Barthelmess* v. *Cukor*, 231 N. Y. 435, 441.)

" Some positions in the civil service may require that the person who fills them have certain qualities which cannot be measured by existing objective tests. This fact should not make it necessary to place the position wholly in the noncompetitive class. The Constitution requires the examination be competitive as far as practicable. Thus, for such positions, the examination should be competitive *except for the testing of the qualities not measurable by objective tests* ". (*Matter of Fink* v. *Finegan*, 270 N. Y. 356, 362–363, emphasis supplied.)

Indeed, if I apprehend petitioner's contention correctly, he does not maintain that a service record rating cannot be a factor in a competitive examination for promotion. In fact, he seeks as alternative relief a review of that rating, with the object in mind, that, upon such review, his service record rating should be raised and thus that his position upon the eligible list should be elevated. His further contention with reference to the service record rating is that it was weighted too heavily. In other words, he contends that giving a weight of 6 to the service record rating and of 4 to the written examination, results in too high an evaluation by subjective standards and too low an evaluation by objective standards, with the result of an examination not sufficiently competitive to satisfy constitutional requirements. In support of that contention he cites the decision in *Matter of Cowen* v. *Reavy* (283 N. Y. 232). In that case, which involved the appointment of unemployment insurance referees, a relative weight of 40% was given to the written examination

and 60% to " training, experience and general qualifications " and, on the facts in that case, the court held that the relative weights thus ascribed, did not comply with the constitutional mandate for competition.

There the court said at page 237: " Upon the present record we find the quality of reasonableness lacking in the action by the Commission which gave a relative weight of forty per cent to the written examinations covering the duties of the position of unemployment insurance referee and ascribed sixty per cent to ' training, experience and *general qualifications.*' "

In that case, the Civil Service Commission not only conducted the written examination for original appointment but also passed upon the " *general qualifications* " of the candidates. As to the general qualifications, the court said, at page 237, they were " wholly subjective to the examiners and unappraised by objective standards of any kind ". There, through whim, caprice, favoritism or for any other improper reason, the examiners could arbitrarily juggle the results of the objective examination, so as to *defeat* the constitutional purpose of a competitive examination based on merit.

In this case, there is no resort to a weighting of " *general qualifications* ". Here, the examiner who passes upon the written examination does not even pass upon the service record rating of the applicant, much less his general qualifications. Here, the examiner who passes upon the objective examination, does not even know until after the rating on the objective examination what the service record rating of the applicant is and that rating is made not by one conducting the written examination but by one who has no connection therewith whatsoever. Moreover, while the service record rating may be technically subjective, the fact is that it results from observations made by a superior officer during the daily work of the applicant in the very service in which he seeks promotion. An evaluation thus arrived at is a far cry from the evaluation of " general qualifications " arrived at by the examiners in the case of *Matter of Cowen* v. *Reavy* (*supra*), who had no opportunity whatsoever to appraise the conduct and qualifications of an applicant by any actual service in the branch of service to which he sought admission on a competitive basis.

In the instant case, the examination is promotional in the very service in which the applicant is engaged. The State Police is regarded by those charged with its administration, and who are in the best position to know, as a " semi-military

organization ". (See Order of Superintendent of State Police, dated April 14, 1951, approved by the Governor on the same day.) The troop commander has constant supervision over this applicant and over other applicants for promotion who are under his command. The ten points listed to be considered in scoring a candidate's service record rating are matters which he has constant opportunity to observe and evaluate and has the advantage of the standard of comparison between all of the men under his command, with reference to the points considered in scoring a candidate's service record rating. The subjective evaluation is not arrived at through a brief and superficial period of observation but rather through almost daily contact over a long period of time.

At any rate, in an organization such as the State Police, and more especially so in the case of a promotional examination, and on the record in this case, this court cannot say that the relative weights assigned rendered the Constitution's mandate for competition futile nor were such relative assignments interdicted by the decision in *Matter of Cowen* v. *Reavy* (*supra*). On the contrary, this court is of the opinion that such assignments of relative weights on the facts in the record in this case, comply with the Constitutional mandate for competitive examinations, so far as practicable.

In view of the conclusion reached, it is not necessary to consider the objection raised by respondent as to the timeliness of this proceeding.

Petition dismissed upon the merits, without costs.

Submit order.