William R. Brennan, Jr., J.
In this proceeding under article 78 of the ’Civil Practice Law and Rules, petitioner, an elector of the school district and a parent of two children who are *285 students in the school system, seeks an order directing the respondents, constituting the Board of Education of Union Free School District No. 12, Málveme, New York, to carry out an order of the Commissioner of Education of the State of New York to end racial imbalance in the public schools of the Málveme School District.
On November 7, 1962 during the course of an appeal brought by certain public school children in the district concerning alleged racial imbalance in the area, a formal argument was heard by the Commissioner of Education of the State of New York. Following the argument the 'Commissioner requested his three-man Advisory Committee on Human Eolations to conduct a special study of the situation in District 12, and to report its findings and recommendations to the Commissioner. After an investigation and study, the Advisory Committee offered four alternative proposals for improving racial balance in the elementary schools of the district. Among these proposals was one, identified as “Proposal No. 1”, which would reorganize the attendance areas of the district so that all pupils from kindergarten to grade three inclusive would attend either the Davidson Avenue or the Lindner Place elementary school and all pupils in grades four and five would attend the Woodfield Eoad school. This proposal of the Advisory Committee, known also as the “Princeton Plan”, was adopted by the Commissioner and, on June 17, 1963, the Commissioner sustained the appeal and specifically ordered the respondent Board of Education to proceed forthwith to prepare a program to make Proposal No. 1 effective on the opening of school in September of 1963 and further directed that the respondents submit such program to the Commissioner not later than August 1, 1963.
Subsequent to the issuance of this order respondents moved for a rehearing before the Commissioner and after the argument upon the rehearing, the Commissioner, on August 13, 1963, reaffirmed his prior order and directed that the program to make Proposal No. 1 effective on the opening of school be submitted to the Commissioner forthwith. The respondent School Board failed to comply with this clear directive, and, instead, on August 15, 1963, adopted a resolution substantially modifying Proposal No. 1, and submitted said modified proposal to the Commissioner of Education. The Commissioner took no further action during the interval which elapsed between his receipt of the modified proposal and August 23, 1963, and on that latter date, in a proceeding brought by one Michael Vetere in Supreme Court, Albany County, under article 78 of the Civil Practice Act, a temporary restraining order was signed prohibiting the Com *286 missioner from causing or permitting to be put into effect or operation any of the plans, determinations, orders or proposals until the hearing on the return of the order to show cause which was set down for September 13, 1963. The Málveme schools were thereafter opened on September 4, 1963, not on the basis of the “ Princeton Plan ” not on the basis of respondents’ modification thereof, but on the same basis as they had operated prior to the Commissioner’s order, and with the same racial imbalance as the Commissioner had found to exist prior to issuing his order.
At the outset, it must be stated that neither the propriety, the legality, nor the constitutionality of the Commissioner’s order is in issue in this proceeding. Such questions may well be placed in issue in the proceeding now pending in the Supreme Court in Albany County, but cannot be decided here, since the Commissioner of Education is not a party to this proceeding and accordingly would not be bound by any determination of such questions by this tribunal.
We are confronted simply with a request that this court enforce an order of the State Commissioner which is under attack in another proceeding, and which the Commissioner himself has been restrained from enforcing. In this regard the case of Matter of Crocker v. Common School Dist. No. 8 of Town of Cochecton (142 Misc. 525, affd. 235 App. Div. 755) is enlightening if not controlling. In that case a recalcitrant trustee of the School District refused to carry out the terms of an order made by the State Commissioner of Education concerning transportation of pupils, and in granting relief by way of mandamus in a taxpayer’s action, the court stated (pp. 527-528): “ For all practical purposes the power of the Commissioner to meet the defiance of his order in a situation such as presented is limited to two acts: i.e., the removal of the trustee; and the forfeiture of the public money. Both of these have been tried without avail. While empowered to act in a judicial capacity, no one has even suggested that he possesses the judicial power to punish for contempt the refusal to obey his lawful mandate. Without such power it is obvious that no matter how many orders he may issue, if those to whom they are directed are sufficiently recalcitrant, and the district involved is willing to lose its share of the public money, then such orders are futile. To hold that such possibility was contemplated by the Legislature would in effect mean that the Legislature intended that a district might trade its share of the public money in return for its refusal to abide by the terms of the statute. If the statute is to be so construed then the districts throughout the 'State, and not the *287 Commissioner, are in control of the educational policy of the State. However, the language of the statute is not consistent with such an interpretation. ‘ Each district, ’ so runs the statute, ‘ which does not maintain a high school shall provide transportation when necessary for its pupils who have completed the work of the eighth grade and are receiving academic instruction in another district.’ (Education Law, § 493, subd. 6, as added by Laws of 1930, chap. 263.) To the Commissioner is confided the power to determine when transportation is necessary, and where this determination has been made then the language of the statute is mandatory. Therefore, the decision of the Commissioner in this matter has affixed upon the respondent trustee the legal obligation to perform a public duty. Whether he wills to do so or not, he has no discretion under the law. The petitioners are citizens and taxpayers of the district involved, and as such have the legal right to insist that the respondent trustee, as a public officer, perform the duty imposed upon him by law. Thus, the requirements for the issuance of an order of mandamus are met, and the motion must be granted.”
The Crocker case stands for the proposition that mandamus is a proper remedy where the State Commissioner of Education, in a matter clearly within his jurisdiction, has made a final order directing a local school board to take action, has then attempted to enforce his order by exercise of his statutory powers, and has been met with absolute definance on the part of the board. The present posture of this litigation differs substantially from the Crocker case. Here, as noted above, we cannot decide whether the Commissioner was acting within his jurisdiction and authority in issuing the order. That question must be decided by the Albany Supreme Court. Here, the Commissioner has not attempted to enforce his order by use of his statutory powers, apparently because the temporary restraining order has prohibited him from doing so. And here, it cannot now be said that the local School Board is acting in absolute defiance of the Commissioner’s order. While the temporary restraining order issued by the Albany court does not by its terms purport to restrain the School Board from acting (only the State Education Commissioner and his staff are under restraint), it has that indirect effect. The order actually restrains the Commissioner from permitting his order to be implemented, and even if the School Board were inclined to implement it, which it is obviously not, it could still not practically do so without inviting still another directive from the Commissioner to cease and desist. Unless the Commissioner issued such a directive he would be risking a citation for contempt of the court order. *288 Thus, by the twin orders, one of the Commissioner to adopt the “ Princeton Plan,” and the other by the court prohibiting the Commissioner from permitting it to be adopted, the School Board has been confronted with a dilemma and, while not directly prohibited, has been thoroughly inhibited and cannot be said by any stretch of the imagination to be in open defiance of anyone.
There is accordingly no authority in this court at this time to issue an order of mandamus. To do so would be in effect to nullify the plain meaning and intendment of the temporary restraining order in the Albany action. We are not an appellate court, and will not, in a collateral action, reverse another court of co-ordinate jurisdiction.
It must also be remembered that, even if a clear legal right were shown, the order of mandamus would still be discretionary. As was stated by Presiding Justice Nolan in Matter of Cromarty v. Leonard (13 A D 2d 275, 287, affd. on his opinion 10 N Y 2d 915): “ Although an order in the nature of mandamus is classed as a legal remedy, equitable principles largely control its issuance (Matter of Coombs v. Edwards, 280 N. Y. 361). Even in cases in which a clear legal right is shown the court must decide whether in the exercise of a sound discretion it will grant or withhold relief (Matter of Durr v. Paragon Trading Corp., 270 N. Y. 464), particularly where the granting of relief will cause disorder and confusion in public affairs (Matter of Andresen v. Rice, 277 N. Y. 271; Matter of Ahern v. Board of Supervisors, 7 A D 2d 538, affd. 6 N Y 2d 376).”
Thus, if discretion were involved, which it is not, the court would nevertheless be constrained at this time to deny the requested relief. We are not unaware of the emotional heat which the entire question of racial imbalance in education has generated in recent months, and can sympathize with those who wish to see an immediate solution to the many problems which it involves. To order the Málveme School Board at this moment to proceed with a program of integration based upon the so-called ‘ ‘ Princeton Plan ’ ’ would do nothing toward solving any problem. It would merely create chaos and confusion in requiring a massive change in enrollment* transportation and school administration at a time when it cannot be ascertained whether or not such a change would have any permanent effect. The Albany litigation will determine the fundamental question of the validity of the State Education Commissioner’s order, and it is only after that question has been resolved that any meaningful and lasting solution can occur. The proceeding is dismissed.