Louis Gr. Bruhn, J.
This is a motion on behalf of the respondent “ for an order returning the above-entitled matter before this Court for further proceedings not inconsistent with the memorandum opinion of the Appellate Division, Third Department, dated December 30, 1964, and the order of the Appellate Division based thereon, together with such other and further relief as to the Court seems just and proper.”
This court now finds itself in somewhat of a dilemma especially in view of the disagreement existing between counsel for the respective parties regarding the meaning and intent of the Appellate Division’s decision.
The Appellate Division (22 A D 2d 1000), in reversing the determination of Justice Staley in this article 78 proceeding reported in 45 Mise 2d 42, remitted the matter “ to the Special Term for further proceedings not inconsistent herewith. ’ ’
The petitioner interpreted the opinion as an indication of a return solely for the purpose of settling a judgment and made such an application to Justice Pitt at a regular Special Term held in the County of Albany on February 11,1965.
In denying the petitioner’s application Justice Pitt stated: “ It is this court’s interpretation of the said decision and order that this matter be remitted to the Special Term of the Supreme Court, Albany County, for further proceedings and not for the entry of judgment or settlement of the same. ’ ’ (Italics supplied.)
This court, of course, in the absence of any appeal from *352 Justice Pitt’s order is bound by such determination and can only consider this application now within the framework of “further proceedings” not inconsistent with the Appellate Division’s decision.
What further proceedings the Appellate Division intended can best be understood by a review of a portion of its opinion which states (p. 1001): “ The provision for an oral examination and the assignment thereto of a relative weight of 20 seem to us unobjectionable per se and might be unobjectionable when combined with a service record rating, also weighted at 20, compiled according to the system previously followed, whereby the service record rating was determined upon the basis of the candidate’s day to day performance, thus representing, it may be presumed, the aggregate judgments of a number of rating officers over a period of time; and the final evaluation resulting therefrom being more objective and more readily appraisable as to accuracy and fairness. The system now formulated involves an evaluation made specifically for purposes of the examination by a rating board guided only by general standards. Thus, upon combination of the service record rating and the oral examination result, an aggregate weight of 40 would be assigned factors constituting judgments largely subjective. This dilution of the competitive elements seems of questionable validity and certainly so in the absence of any proof and finding of the practical necessity therefor. (Cf. Matter of Fink v. Finegan, 270 N. Y. 356, 363, Matter of De Luca v. Gaffney, 282 App. Div. 607, 611.) ” (Italics supplied.)
In substance what the Appellate Division has said is that it has no objection to crediting a relative weight of 20 to the oral examination and likewise no objection to crediting an additional relative weight of 20 to a service record rating so long as this latter rating was arrived at by the method previously used.
However, they do object to the method now devised since it envisions an evaluation made especially for purposes of the examination by a board using only general standards.
In effect the court said that such a combination of an aggregate weight of 40 to factors involving judgments largely subjective with its consequent dilution of competitive elements may not be acceptable at all but certainly not acceptable absent a demonstration “ of the practical necessity therefor.”
Since in arriving at that conclusion the court relied on the Fink and De Luca cases (supra), an understanding of the full import of those cases should better enable us to properly equate the “proof” which the attorneys for the parties have agreed is to be used to resolve the question of “ practical necessity,’'
*353 Incidentally, the attorneys have agreed that such “ proof ” be limited solely to an affidavit of Walter J. Hogan, an Assistant Attorney-General, sworn to February 11, 1965, an affidavit of the respondent sworn to February 10, 1965, an affidavit of William C. Keeley, with its attached exhibits, sworn to January 29, 1965, and a State Police publication dated June, 1962 titled “ A Guide for the Bating Officer ”, which was submitted by the petitioner.
The Appellate Division indicated that the critical language of the Fink case was to be found at page 363 where the court stated: “ the examination should be competitive except for the testing of the qualities not measurable by objective tests. (Cf. People ex rel. Sweet v. Lyman, 157 N. Y. 368.) However, before a non-competitive test is made part of an examination for a competitive position it should be found that the quality to be tested is essential for the position and that no objective standard or measure is available. For these reasons, the non-competitive test should not be employed unless the need is imperative.” (Italics supplied.)
In the Be Luca case (supra), the Appellate Division indicated its reliance on language appearing on page 611. There we find: “ We do not mean to say that service record ratings may not be used in determining the fitness of a State trooper for promotion, or as to what weight should be given them. Such propositions depend, we suppose, upon the rational and practical necessities of the service, and the manner in which ratings are determined. It may be possible that there is no practicable method of selecting candidates for promotion in the State police other than the system promulgated by the superintendent. There is no proof however of such a proposition in this record. In view of the Andresen case [277 N. Y. 271] such a matter should not be adopted merely as a matter of theory but should have the support of a finding sustained by evidence. The Andresen case was decided upon the basis that the State police were in the same category as any other police force, so far as the record there showed.” (Italics supplied.)
In the light of such Andresen holding and on the basis of the proof submitted in this case we must conclude that this record likewise fails to show that the duties of the State Police are any different ‘ ‘ than those performed by the police in the city of New York and other large cities of the State.” (Matter of Andresen, supra, p. 279.)
We must also conclude that “ the examination must include the competitive element as long as experience teaches us that it *354 is practicable to get capable policemen by this method.” (Matter of Andresen, supra, p. 280; italics supplied,)
With these thoughts in mind we should now examine both the qualities which were tested together with the proof establishing the essential nature of such qualities for the position of Sergeant.
The qualities which were tested in the service record rating were (1) initiative, (2) industry, (3) ability to work under pressure, (4) planning ability, (5) accuracy, (6) attitude, (7) reliability, (8) co-operativeness, (9) judgment and (10) responsibility.
Confusion, more than enlightenment, flows from the respondent’s proof because in paragraph “8” of Keeley’s affidavit we find this language following a recital of the afore-mentioned characteristics: “These elements, after considerable study by Field and Headquarters officers, were determined to be the most essential qualities of a candidate for the position of a New York State Police Sergeant”. (Italics supplied,)
In apparent contradiction we find on page 3 of the respondent’s affidavit: “ That prior to approving the adoption of the Service Record Rating for promotional purposes as recommended by the Executive Committee of the Division of State Police composed of 9 members of the State Police * * * it was, and remains, my considered judgment, * * * that such rating was necessary ”. (Italics supplied.)
As further evidence of the apparent disagreement as to what constitutes the most essential elements to be considered we need only refer to paragraph “3” of Hogan’s affidavit.
As further evidence of the theoretical rather than the practical application of the rating system employed by the respondent we need refer only to paragraph “6” of Keeley’s affidavit wherein he states: “ there should be an evaluation of a candidate’s past performance specifically as to areas which were related to leadership and supervisory ability,” and then observe that question 21 on personnel 16 titled “ Executive Ability ” has these traits listed: (A) leadership (B) ability to handle personnel (C) planning (D) making decisions (E) assignment of work (F) training subordinates (Gr) devising procedures (H) emotional stability (I) promoting high morale (J) getting results. (Italics supplied.)
A comparison of those traits with the 10 judged on the service record rating immediately suggests that the selected 10 may not be the “ most essential qualities.”
*355 Strange also is the fact that the service rating covers only a two-year period while the performance rating covers the trooper’s entire career.
Especially strange is snch a new and changed system when we find, at page 4 of the “ Guide for the Rating Officer ” this language: “ It was evident that an employee evaluation and rating system must be established which would provide for the periodic rating of each employee by an official superior in order that a permanent record of performance would be made and kept up to date. Such a system is a necessary and invaluable aid in identifying those employees who have progressed to the point where they are ready to assume greater responsibilities.” (Italics supplied.)
This new system of record rating rather than performance rating appears to be no more than another attempt to avoid the full impact of the holding in the Andresen case (supra). It cannot succeed, however, because by pyramiding a record rating on top of an existing performance rating it becomes even more subjective and less competitive. Furthermore, because of an evaluation covering such a short and limited period, it could well result in an injustice to a substantially good performance rating established over a long period of time either by adjective or numerical evaluation.
In view of the foregoing and based upon a consideration of all of the evidence submitted this court is of the opinion, first, that the respondent has failed to demonstrate either that only the qualities selected are “ essential ” and/or that “ no objective standard or measure is available.”
In essence the respondent has failed to demonstrate a ‘ ‘ practical necessity ” or “ imperative ” need for such a drastic dilution of the competitive elements and for that reason the petitioner’s application is granted, with costs.