Scileppi, J.
The respondent Board of Examiners of the Board of Education of the City of New York appeals, pursuant to leave granted by this court, from an order of the Appellate Division, Second Department, which unanimously affirmed a judgment of Supreme Court, Kings County, adjudging that failure ratings given the petitioners in interview tests in an examination for licenses as elementary school principals be cancelled and directing the respondent to conduct new interview tests for the petitioners.
The 17 petitioners in this proceeding were candidates in an examination conducted by the respondent Board of Examiners for licenses as principals of day elementary schools. The examination consisted of three parts: a written test, a supervision test and an interview test. The petitioners passed the first two tests but failed the third and, consequently, were denied licenses.
According to section 24 of the Board’s General Regulations Governing Examinations, the purpose of an interview test was as follows: “An interview test to evaluate any or all of the following: the applicant’s ability to discuss problems relating to his subject or to the teaching of his subject or to the position sought; those aspects of personality as to which an interview affords a basis of judgment; the applicant’s oral reading ability; and his use of English in discussion. Other aspects of the applicant’s fitness may also be evaluated, such as his experiential background, his command of a foreign language (in the case of *412 foreign language licenses), etc.” Bach interview test was conducted by a panel of four assistant examiners. The panels consisted of two elementary school principals, a college professor, and a speech expert. The assistant examiners were selected by the Board of Examiners under the supervision and direction of Dr. Isidore Bogen, the member of the Board of Examiners who was in charge of administration of the examination. At the beginning of each examination day, Dr. Bogen delivered a one-hour briefing to all persons who were to act as assistant examiners on that day. All examiners were required to attend the briefing even though they may have attended other briefings on other examination days. Written instructions concerning examination procedures and a statement of the problem on which the candidates were to be examined were given to the examiners during these briefings. Each interview test was 45 minutes in duration. On the day of the interview test, each applicant was given a written problem which dealt with a specific aspect of elementary education. The problem was designed to measure the candidate’s awareness of what was taking place in the academic world and his ability to express himself and respond to challenges in a face-to-face encounter with an examining panel. The applicant was given one hour to examine the question and to make notes in preparation for his answer to or discussion of the problem. The applicant was allowed to bring these notes into the examination room and to refer to them while discussing the problem, but he was not allowed to read his answer to the panel. During the first 15 minutes of the interview test, the applicant gave his answer to the problem without interruption. During the remaining 30 minutes of the interview, the examiners asked the candidate questions. There was no requirement that the panel restrict its questions to the specific problem presented to the candidate. Questions relevant to any aspect of elementary school administration were permissible.
During the course of the examination, the examiners, other than the speech expert, had before them rating sheets which contained 21 items of performance under the four major categories of “speech”, “oral discussion ”, “interpersonal relationships” and “other traits of personality ”. “Speech” was broken down into the items of “ language usage and diction ”, “ clearness and fluency of expression ”, “ enunciation and pro *413 nunciation ”, and “ voice quality and inflection ”. “ Oral discussion ” was broken down into the items of “ comprehension of problems ”, “ comprehensiveness of treatment of problems ”, “ definiteness and practicality of proposals ”, “ soundness of judgment (e.g., in making decisions) ”, “ presentation of ideas in organized sequence ”, “ clarity of explanation ”, “ appropriateness and adequacy of illustrations ” and “ ability to meet challenges effectively”. “Interpersonal relationships” was broken down into the items of ‘ ‘ understanding interpersonal aspects of problems and proposals ”, “ tact: sensitivity of feelings of other people ”, “ ability to establish rapport with other people ” and “ resourcefulness in leading other people ”. “ Other traits of personality ” was broken down into the items of “ appearance ”, “courtesy”, “poise”, “ frankness ” and “ vitality”. Next to each item of performance on the rating sheet there was room for comments of the assistant examiners. The examiners had to mark the candidate’s performance in each category according to the following system: if the performance was unsatisfactory, he received a grade of very poor or inadequate ; if his performance was satisfactory, he received a grade of passable, good or superior. These ratings had numerical equivalents ranging from 1 to 10 with 6 being the passing mark.
The examiners, other than the speech expert, were also required to keep “ running notes ” on the candidate’s performance. Dr. Bogen instructed the examiners to make these running notes as complete as possible. Since the examiners were not trained stenographers and since the examiners were required to make these running notes while questioning an applicant, the notes were not intended to serve as a verbatim transcript of the candidate’s answers and performance. They were intended, however, to capture the gist of the candidate’s answers to the questions asked of him and to capture the examiners’ impressions of the candidate’s personality and ability.
The speech expert had before him an “ oral English work sheet ” containing various categories of speech performance. This sheet provided spaces for rating the candidate in “ conversational speech ”, “voice” and “enunciation and pronunciation ” and it contained spaces for “ additional comments ”.
*414 After the examination was over and the candidate had left the room, the members of the examining panel individually gave the candidate a tentative rating on the interview test rating sheets or in the case of the speech expert on the oral English work sheet. The panel members then entered into a discussion of the candidate’s performance, with the speech expert participating only with respect to the candidate’s performance in the category of speech and other personality traits. After the discussion had been completed, each panel member made his final ratings on the individual items of performance and arrived at a final over-all rating. Although the over-all rating was to be based on the total pattern of the candidate’s performance, it was not necessarily an arithmetic average of the ratings on the individual items of performance. Since the speech expert had only an advisory role, his rating did not enter into the final overall rating of the examining panel. The panel’s final rating was arrived at by taking the rating which was between the highest and lowest of the individual ratings.
If the panel decided to fail a candidate, they were required to write out a statement entitled “Reasons for Failure”. This statement was a succinct presentation of the candidate’s shortcomings with illustrations of the same. A panel member who disagreed with the majority of the panel could write a minority report expressing his reasons for the disagreement.
The panel’s recommendation, together with the prepared question presented to the candidate, the candidate’s notes, the examiners’ running notes, the rating sheets and the statements of reasons for failure, was submitted to Dr. Bogen for a review. Upon reviewing this information, Dr. Bogen recommended that the rating be accepted by the school board of examiners if he was convinced that there was a substantial basis for the panel’s rating.
Special Term vacated the results of the petitioners’ tests for three reasons:
(1) Respondent did not employ sufficiently objective standards in rating petitioners ’ performance;
(2) the “ running notes ” made by the assistant examiners were insufficient to enable review by examiners of equal ability and experience; and
*415 (3) respondent violated its own by-law (§ 19, snbd. 2) by employing examiners who had not been approved by the New York City Civil Service Commission.
The Appellate Division, while affirming Special Term’s judgment, disagreed with its reasoning in part. The court held that the “ 21 items delineating the four major categories of the test were sufficiently objective ’ ’. It agreed however, that the panel’s running notes did not provide an adequate record for review. The Appellate Division made no mention of the necessity for approval of the assistant examiners by the Civil Service Commission.
Section 6 of article V of the Constitution of the State of New York provides: “Appointments and promotions in the civil service of the state and all of the civil divisions thereof * * * shall be made according to merit and fitness to be ascertained, as far as practicable, by examination which, as far as practicable, shall be competitive ’ ’.
This court addressed itself to the application of this constitutional mandate to oral examination in Matter of Fink v. Finegan (270 N. Y. 356). In Fink, the petitioner was a candidate for police surgeon, medical officer in the Fire Department, or medical examiner in the Department of Sanitation. He had passed the written tests and thereafter he took an oral examination consisting of technical questions of a medical nature, which he answered correctly. Nevertheless, he failed the oral examination because in the opinion of the examiners he was lacking in executive ability. This court vacated the results of the test. We held that there was no showing that executive ability was a quality necessary for the position sought nor did the notice of examination inform the petitioner that this quality would be tested. Furthermore, there were no objective standards set for measuring the petitioner’s executive ability nor was there any showing that such standards could not be set. We went on to hold that “ An examination cannot be classed as competitive unless it conforms to measures or standards which are sufficiently objective to be capable of being challenged and reviewed, when necessary, by other examiners of equal ability and experience ” (Matter of Fink v. Finegan, supra, p. 362). The court noted, however, that some civil service positions require qualities *416 which cannot be measured objectively and in those cases subjective standards would be permitted.
In Matter of Sloat v. Board of Examiners (274 N. Y. 367) the petitioner applied for a teaching license in fine arts. She was subjected to a number of tests including an interview test and a teaching test. The petitioner failed both of these tests and was denied a license. She attempted to have the results of the test set aside on the ground that the test was not objective as was required by our holding in Matter of Fink {supra). This court concluded that petitioner’s reliance on Matter of Fink was misplaced and refused to set aside the results of the test: ‘ ‘ The mandate of the Constitution for the ascertainment of merit and fitness, so far as practicable, by competitive examination, may not be transformed into an interdict against the examinations which are best adapted for the demonstration of fitness. It would be impossible to formulate a standard by which such qualities may be defined or measured with entire objectivity. The law does not require the impossible or forbid the reasonable. The record discloses that here the examiners have based determination upon their estimates of qualities which, it is reasonably clear, affect the merit and fitness of a teacher and that this estimate is derived from tests calculated reasonably to show those qualities. Evidently it is not practicable to apply such tests in exactly the same form to each competitor or to make exact comparisons between them. That is true in some degree of every examination, especially of examinations calculated to show intellectual ability and broad cultural learning. Exact definition of the qualities which are essential or desirable may be impossible; exact formula or standard by which such qualities may be measured has never 'been achieved; mechanical application of any standard is certainly not practicable. Much must be left here to the judgment of the examiners. The test cannot be wholly objective and to the extent that it is subjective the result may depend as much upon the fitness of the examiners as upon the fitness of the candidate. That is a risk inherent in all systems of examination.” (Matter of Sloat v. Board of Examiners, supra, p. 373.)
In the case at bar, the petitioners were candidates for the position of day elementary school principal. The qualities one must possess to adequately fulfill the duties of such a position are *417 many and varied. He must have a capacity for leadership. He must be capable of establishing rapport with teachers, students and parents. He must be imaginative and capable of expressing his ideas to others, either individually or in groups. These qualities cannot be measured with any degree of precision. In such cases ‘ ‘ Much must be left * * * to the judgment of examiners ” (Matter of Sloat v. Board of Examiners, supra, p. 373) and the “ examination may be subjective insofar as objectivity is impracticable or impossible ” (Matter of Burke v. Fields, 279 App. Div. 674, affd. 306 N. Y. 845; accord, Matter of Walker v. Board of Examiners, 22 Misc 2d 345, affd. 7 A D 2d 968, mot. for lv. to app. den. 6 N Y 2d 707; Matter of Colbath v. Board of Examiners, N. Y. L. J., Oct. 28, 1957, p. 7, col. 2, affd. 7 A D 2d 968, mot. for lv. to app. den. 6 N Y 2d 706; Matter of Pearl v. New York State Dept, of Civ. Serv., 8 Misc 2d 712, affd. 5 A D 2d 739, mot. for lv. to app. den. 4 N Y 2d 678; Matter of Lehrman v. Board of Examiners, 22 Misc 2d 348; Weinberg v. Fields, 114 N. Y. S. 2d 238).
The petitioners contend, and the courts below agreed, that, since the interview tests were not stenographically or electronically recorded, they were not susceptible of objective review by other examiners. The petitioners specifically point to the ‘ ‘ running notes ” made by the examiners during the course of the interview which were in some instances fragmentary and illegible. In response to the petitioners’ contention, the Board of Education argues that many of the traits and qualities which are tested by the interview tests do not lend themselves to stenographic or electronic recording. In addition, argues the board, review of the results of the interview test is not limited to the examiner’s running notes. The reviewer of the test results has before him the test question, the applicant’s preparatory notes, the interview test rating sheets, the oral English work sheet, the statement of reasons for failure, as well as the running notes.
While much might be said in favor of stenographic or electronic recording of the interview tests, it cannot be said that they are required as a matter of law (Matter of Walker v. Board of Examiners, supra; Matter of Colbath v. Board of Examiners, supra; Matter of Lehrman v. Board of Examiners, supra; Weinberg v. Fields, supra). All that the law requires is that the results *418 of the examination he so stated so that they are capable of being reviewed (Matter of Andresen v. Rice, 277 N. Y. 271). The records of the interview tests submitted to the Board of Examiners were sufficient to meet this requirement.
Lastly, the petitioners allege that the results of the test should be vacated because the examiners administering the test had not been approved, prior to the examination, by the Civil Service Commission, as provided for by section 19 (subd. 2) of the bylaws of the Board of Examiners. This contention is without merit (Matter of Goldberg v. Board of Examiners, 28 A D 2d 533).
To conclude, the interview test was sufficiently objective under the circumstances, the record was adequate for review and the failure to submit the names of the examiners to the Civil Service Commission does not entitle the petitioners to a vacation of the results of the test.
Accordingly, the order appealed from should be reversed, without costs, and the petition herein dismissed.
Chief Judge Fuld and Judges Burke, Bbegan, Keating, Bkeitel and Jasen concur.
Order reversed, etc.