In the Matter of ALBERT NATHANSON, Petitioner, against FRANCIS W. H. ADAMS, as Police Commissioner of the City of New York, Respondent.

Supreme Court, Special Term, New York County, February 24, 1955.

*Irving L. Stein* and *Joseph Taubman* for petitioner.

*Adrian P. Burke, Corporation Counsel (Thomas W. A. Crowe* of counsel), for respondent.

HOFSTADTER, J. The petitioner in this proceeding under article 78 of the Civil Practice Act applies for an order against the police commissioner of the City of New York directing him to appoint the petitioner a probationary patrolman in the police department.

The petitioner is an honorably discharged veteran who served in the military forces of the United States in World War II. He attained the rank of sergeant in the military police. He is married and has two children. In 1953, he passed successfully a competitive examination for patrolman in the city police department and thereafter was examined by a police lieutenant with respect to his fitness for appointment. This inquiry focused on a Communist party petition alleged to have been signed by the petitioner's mother in 1940, or 1941, when the petitioner was a lad of about fifteen years of age, and on traffic and hack bureau violations of which the petitioner had been found guilty mainly during his employment as a taxi driver under a license issued by the hack bureau of the police department. He was informed by the lieutenant that the city civil service commission would accord him a hearing to determine his fitness.

Under date of August 25, 1954, the city's department of personnel summoned the petitioner to appear before the city civil service commission on August 30, 1954, to show cause why his name should not be removed from the eligible list for patrolman. He appeared on August 30, 1954, in response to this summons and submitted to inquiry on the matters already mentioned. On the same day, the department of personnel sent him formal written notice that the city civil service commission at a meeting held that day had marked him qualified pursuant to section 14 of the Civil Service Law. Under date of September 3, 1954, however, the chief clerk of the police department wrote the petitioner that his name had been certified for appointment but had been passed over and that the department of personnel would be notified accordingly.

The petitioner's request for an interview to discuss the reasons for the passing over of his name was met with the statement that this was done in the exercise of the discretionary power vested in the police commissioner and that it is not the department's practice to give reasons when the power is exercised.

The answering papers on the present application state that the petitioner's name was considered by the police commissioner for three separate and distinct appointments, with two other eligibles in each instance, and that the petitioner's name was passed over in each of the three instances. Under the rules of the civil service commission, to which further reference will be made, the effect of thus passing over the petitioner three times is to bar him from appointment as patrolman. The grounds for the foregoing action of the police commissioner are nowhere disclosed.

It is asserted by the petitioner, but denied in the answer, that persons guilty of more serious breaches of the law than those committed by him have been appointed as probationary patrolmen from the same eligible list. The answer does, however, admit that " there is no question concerning the loyalty of the petitioner as a citizen " and that he has never been convicted of any crime. The petitioner's basic contention here is that he has been denied appointment solely because of the Communist party petition signed, not by him, but by his mother when he was a mere boy, and that there is a complete absence of proof tending even remotely to reflect on his loyalty. He argues that, in the circumstances, the action of the police commissioner runs counter to the determination in the *Hamilton* case (*Matter of Hamilton* v. *Brennan,* 203 Misc. 536; *Matter of Hamilton* v. *Monaghan,* 133 N. Y. S. 2d 624).

This case, however, differs from the *Hamilton* case. The only fact claimed adversely to affect Hamilton's record was his having signed a Communist party petition. In the first *Hamilton* case (203 Misc. 536, *supra*) it was held that, in the absence of something more than the mere signing of the petition in the circumstances there shown, revealing subversive activity or inclination, there was no justification for pronouncing Hamilton ineligible for appointment as a patrolman. Accordingly, the civil service commission was ordered to restore his name to the eligible list. The second *Hamilton* case decided that the police commissioner in thereafter refusing to appoint Hamilton had not really exercised any discretion at all and directed the commissioner to appoint Hamilton (133 N. Y. S. 2d 624, *supra*).

In this case we have the added factor of the petitioner's traffic and hack bureau violations. How far does this factor affect the result? Though there may be no natural or inherent right to public employment (*McAuliffe* v. *Mayor of New Bedford,* 155 Mass. 216, 220), the Constitution does protect against arbitrary exclusion from the public service (*Wieman* v. *Updegraff,* 344

U. S. 183). Essentially, then, the question posed is whether the petitioner's rejection was arbitrary.

As the head of the police department, the police commissioner has the power of appointment (New York City Charter, § 431, subd. a; § 884). The manner in which this power is to be exercised in making appointments from open competitive lists is prescribed by the rules of the civil service commission. Subdivision 1 of section VII of rule V provides in part: " The Commission shall upon receiving a request from an appointing officer for the certification of eligibles for a vacant position certify from the eligible list for that position  *  *  *  the three names at the head of such list. No name shall be certified more than three times to the same appointing officer for the same or a similar position, unless at such officer's request." Paragraph (a) of subdivision 2 of section VIII of rule V provides: " Appointments from open competitive lists shall be made as follows: (a) The appointing officer shall make selection from the three names certified."

The respondent insists that in not appointing the petitioner he exercised the right of selection so conferred on him and that his action is not subject to judicial review. Undoubtedly the police commissioner has a wide administrative discretion in making appointments (see *People ex rel. Balcom* v. *Mosher,* 45 App. Div. 68, affd. 163 N. Y. 32; *Hurley* v. *Board of Education of City of N. Y.,* 270 N. Y. 275; *Matter of Berger* v. *Walsh,* 291 N. Y. 220; *Matter of Turel* v. *Delaney,* 287 N. Y. 15, and *People ex rel. Burns* v. *Lyons,* 266 App. Div. 1053). The court should not lightly enter the domain in which an officer exercises administrative discretion lodged in him by law (see *Matter of Larkin Co.* v. *Schwab,* 242 N. Y. 330), especially in so sensitive a branch of the public service as the city's police department. If the record made it clear that the respondent considered the petitioner unfit to become a patrolman because of his traffic and hack bureau infractions, the court could not disturb this administrative judgment.

The true ground of the petitioner's rejection, however, lies embedded in obscurity. On the papers before me, it cannot be determined whether he was refused appointment because his mother years ago signed the petition or because he himself broke the traffic and hack bureau regulations. If the rejection rests on the petition, it is arbitrary and subject to judicial correction, notwithstanding its occurrence in the purported exercise of the administrative power of selection. Arbitrary action cannot elude judicial reach by the plea that it was no more than the

use of proper administrative discretion. The moment it is shown to be arbitrary, it ceases to be discretionary (*Calzaretta* v. *Mulrain,* 131 N. Y. S. 2d 76; *Matter of Hamilton* v. *Monaghan,* 133 N. Y. S. 2d 624, *supra*; *De Nicola* v. *Adams,* N. Y. L. J., Sept. 23, 1954, p. 6, col. 3).

It will be recalled that after inquiry into the selfsame matters which led to the petitioner's nonappointment as patrolman, the civil service commission pronounced him qualified. Though certification by the commission may not entitle an eligible to appointment, the petitioner may understandably have felt bewildered when he found two city agencies at practically the same time setting up conflicting standards of fitness for the position to which he aspired. In these circumstances, the petitioner, the community and the court have the right to know the ground of his rejection. Only when this ground becomes known can the court determine whether the respondent acted within the broad area of administrative discretion immune from judicial interference, or whether he acted arbitrarily. In the latter case, of course, the courts must step in to protect the citizen against the encroachment of unbridled power. Absolute power is repugnant to the concept of a free society.

In thus calling on the respondent for a fuller statement of the basis for his action, the court merely follows a course it adopted in an analogous situation a year ago (*Colyer* v. *Brennan,* N. Y. L. J., March 29, 1954, p. 8, col. 1). Since a trial court is required to state the facts which it deems essential when it decides a nonjury case (Civ. Prac. Act, § 440; *Mason* v. *Lory Dress Co.,* 277 App. Div. 660), it is no more than seemly that, when administrative action is challenged in good faith as arbitrary, the challenge should be met by disclosure. Such disclosure alone can furnish the basis for the court's informed judgment.

Accordingly, the petition is granted to the extent of annulling the respondent's action and remitting the matter to him for further appropriate procedure. Settle order.