Hofstadter, J.
This is a proceeding to review the action of the police commissioner of the City of New York, terminating the petitioner’s services as a probationary patrolman. On February 1, 1955, the petitioner, who had previously been employed by the city’s department of sanitation, was appointed a probationary patrolman in the police department. Before that he had spent twenty-one months in the naval service of the United States, from which he was honorably discharged, and then for over six years he was an able-bodied seaman with the Military Sea Transport Service.
Shortly prior to the expiration of his probationary period of service the petitioner was given a physical examination by the examining committee of police surgeons. This committee on July 8, 1955, reported that the petitioner was suffering from hypertension and that this automatically disqualified him for permanent appointment. The petition states that immediately before his physical examination on July 8, 1955, the petitioner had served an all-night tour of duty from midnight until 8:00 a.m., and that for two days before that he had no sleep because of the illness of his two children. He calls attention, too, to the extreme heat and humidity at the time. Claiming that the high blood *582 pressure found on the examination of July 8, 1955, was due to these unusual circumstances and did not reflect his normal condition, the petitioner was examined soon thereafter by three private physicians who found his blood pressure within normal limits. He also requested and, at the suggestion of one of the police surgeons who had examined him on July 8, 1955, was accorded a re-examination. The re-examination was made on July 28,1955, by the same three physicians who had examined the petitioner on July 8,1955. Their full written report of July 28th, signed by all three, showed his blood pressure to be far lower than that of July 8,1955. In this report the examining committee stated that the previous high readings were probably accounted for by the fact that the petitioner had come to the examination directly from a tour of night duty, that he had been on like tours for the four previous nights and also that his natural concern over the illness of his children could have contributed to the elevation of blood pressure. The report concluded that it was the impression of the examining committee that the petitioner does not suffer from true hypertension, but has a fluctuating blood pressure and ‘ ‘ after careful consideration it is our opinion that this man is suitable for Full Police Duty.”
The deputy chief surgeon, who had examined the petitioner on July 13th, when he confirmed the July 8, 1955, rejection of the examining committee, did not take this view. On July 29, 1955, he reported that he had read the findings of the committee made on July 28, 1955, that his own hypertension findings were obtained July 13th, at which time there was no history of unusual occurrence, and, in his opinion, hypertension, even if transitory, should reject. The commanding officer of the petitioner’s precinct recommended his permanent appointment. The commissioner accepted the recommendation of the deputy chief surgeon and terminated the petitioner’s service as of midnight July 31,1955.
It is this termination which is challenged as arbitrary and capricious. Though the occasion for the denial of permanent appointment to the petitioner differs somewhat from the situation in other cases which have been before our courts in recent years, the general principles by which this application must be determined are the same. As in those cases, the respondent here invokes the broad discretion given him by law in selecting members of the police force, whether for probationary or for permanent appointment. Obviously, the courts should not lightly trespass on this discretion. I have already expressed myself to that effect (Matter of Nathanson v. Adams, 207 Misc. 572, 576). Nevertheless, as the Court of Appeals said in Matter of Schwab *583 v. McElligott (282 N. Y. 182, 186): “ The field is limited within which the discretion of an administrative officer or board may be exercised unhampered by judicial review. ’ ’
The police commissioner’s discretion in appointing patrolmen, has been held not to be within the narrow field beyond the reach of judicial review (Matter of Hamilton v. Monaghan, 285 App. Div. 692; Matter of Maynard v. Monaghan, 284 App. Div. 280). As the court said in the Hamilton case (supra, p. 693): “ We have held that while the appointing officer has the broadest discretion in the exercise of his powers it is not unlimited ”. The court there, too, held that the governing principles are alike, whether the case be, as here and in the Maynard case, the termination of probationary service and consequent denial of permanent status, or, as in the Hamilton case, one of initial appointment. Unbridled power has no true place in a free society.
In my opinion, the petitioner has presented enough, under the foregoing authorities, to entitle him to a trial of the issue whether his rejection for permanent appointment was arbitrary and capricious. The trier of the facts will say whether there was a genuine exercise of discretion, or whether action was taken without any real consideration of the factors bearing on the petitioner’s fitness for appointment. The petitioner having seasonably demanded a jury trial, the issue will be tried by jury. Settle order.