Hofstadter, J.
The petitioner, having passed a written competitive examination and met the other prescribed tests, was certified by the department of personnel, civil service commission, as eligible for appointment as a patrolman in the police department of the City of New York. On February 1, 1955, he was appointed a probationary patrolman and entered the Police Academy for training and instruction to become a police officer. The Police Academy’s course of instruction, designed to fit recruits for the discharge of their duties as patrolmen, consists of two parts, one academic, the other devoted to firearms and physical training. The academic course, in turn, is divided into five parts under these titles: I Introduction to a Police Career; II Police Methods and Techniques; III Government and Laws; IV The Police-Community Life; and V Demonstrations, Exercises and Tests. The academic course is one of intensive study, covering not alone practically every phase of police activity but the place of the police in the community as well, and entails both formal instruction and home study assignments. The petitioner was at the academy from February 1st to May 6th, and on May 7, 1955, was transferred to a local precinct. .
At the end of the training course the petitioner failed to pass the academic part, his general average at the final test being 66.60%. He was then given additional part-time training from May 7 to June 20, 1955, for his further assistance; in this supplemental training the petitioner also received individual tutoring. However, he again failed to attain the passing general average of 68% fixed for the academic part of the course. His general average on his final re-examination was only 66.40%. Four members of the Police Academy reported that the petitioner had not ‘1 demonstrated the mental capacity to properly perform the duties of patrolman ’ ’ and recommended that he he dropped from the rolls of the department. Adopting this recommendation, the police commissioner terminated the petitioner’s services in the police department, effective July 31, 1955, at the expiration of his probationary period.
The petitioner in this proceeding brought under article 78 of the Civil Practice Act seeks to annul the commissioner’s determination and asks the court to direct his reinstatement. His underlying contention is that the academic examination which he was required to take at the end of the Police Academy *806 course set up standards of eligibility for the position of patrolman in addition to those established by the department of personnel, in violation of the principle that, under the Civil Service Law, the department of personnel, civil service commission’s certification of eligibility concludes the appointing officer. (See Matter of Wolff v. Hodson, 285 N. Y. 197, 201.) The principle so relied on by the petitioner is too well established to admit of doubt. The real question here is whether the course followed by the police commissioner constituted the adoption of eligibility tests other than or in addition to those prescribed by the commission.
The rules of the civil service commission invoked by the petitioner, requiring notice and an opportunity to be heard before a probationary appointee may be marked ‘ ‘ not qualified ’ ’ and his certification revoked for unsatisfactory character or reputation or mental or physical unfitness for the position are clearly inapplicable here, for admittedly his certification was not revoked. His eligibility is not in question at all. Nor is there any true basis for the petitioner’s assertion that he graduated from the Police Academy. Though he took the full course there and on its completion was transferred to a precinct, his failure to pass the examination or the re-examination for the academic part demonstrates conclusively that he never graduated.
The petitioner, while recognizing the police commissioner’s power to end the employment of a probationary patrolman at the expiration of his probationary period if his services are found unsatisfactory, challenges the commissioner’s right to determine his aptitude for police duty by written test. That is the narrow question which this application poses for decision.
It seems self-evident that certification of eligibility is merely a declaration that the individual possesses the minimal basic requirements which the civil service examiners prescribe for the position. It is in no sense an assurance that he has the endowments needed to discharge the duties of the position efficiently and to the satisfaction of his superiors. The very purpose of the probationary period is to enable the department head to train him and to observe his development and fitness for his tasks. It is, as its name denotes, a trial period and the law so regards it. (People ex rel. Sweet v. Lyman, 157 N. Y. 368; People ex rel. Kastor v. Kearny, 49 App. Div. 125,128, affd. 164 N. Y. 64.) Certification of eligibility does not rob the department head, charged with the conduct of his department, of the right to inquire into the capabilities of a probationary appointee and bis fitness to do the work he will be called upon *807 to do if permanently attached to the service. A contrary rule would do away with true probation. These observations are peculiarly applicable to a department as sensitive and critical as the police department, especially in view of the present-day laudable trend to improve its calibre. I have heretofore had occasion to comment on this aspect of police service. (Matter of Hamilton v. Brennan, 203 Misc. 536, 543; Matter of Nathanson v. Adams, 207 Misc. 572, 576.)
There is no necessary conflict between eligibility and a training course such as that given at the Police Academy, intended both to test the probationary-appointee’s aptitude and to equip him to become a more effective officer, if appointed permanently. Indeed, it is an enlightened method of lifting the department’s tone and providing the public with better and more intelligent service. If the police commissioner, in his judgment, finds a written examination at the end of the course an appropriate means of appraising fitness, it is within his province to use it. So long as all are treated fairly and uniformly — there is not even a suggestion here that they have not — the choice lies with the commissioner, and is beyond the reach of judicial interference. (See Matter of Sinaly [Kennedy], 2 Misc 2d 107.)
It follows that the petitioner has failed to establish any grievance under the law. His petition is accordingly denied and the proceeding is dismissed.