In the Matter of MICHAEL J. MAYE, Individually and as President of Uniformed Firefighters Association, Local 94, International Association of Firefighters, AFL-CIO, et al., Respondents, *v.* JOHN LINDSAY, as Mayor of the City of New York, et al., Appellants, and SIMEON GOLAR, as Chairman of the Housing Authority of the City of New York, Respondent.

First Department, March 8, 1973.

*Edmund H. Hennefeld* of counsel (*Stanley Buchsbaum* with him on the brief; *Norman Redlich, Corporation Counsel*), **for** appellants.

*Stuart Linnick* of counsel (*Robert A. Kennedy, Murray A. Gordon* and *Leslie Trager* with him on the brief; *Doran, Colleran, O'Hara & Dunne*, attorneys for Michael J. Maye; *Phillips, Nizer, Benjamin, Krim & Ballon*, attorneys for Edward J. Kiernan; *Kaye, Scholer, Fierman, Hays & Handler*, attorneys for Harold H. Melnick; *Murray A. Gordon, P. C.*, attorney for Raymond W. Gimmler; *Gladstone & Lowell*, attorneys for Joseph L. Balzano), respondents.

STEVENS, P. J.  The various petitioners, suing individually and as presidents of their respective organizations, commenced this article 78 proceeding to enjoin respondents from proceeding with a scheduled examination for positions as Aides Model Cities (M.C.) in the Fire and Police Departments and the Housing Authority, to enjoin the establishment of such positions, and to declare unlawful and unreasonable any actions of respondents to that end.

Petitioners-respondents (herein petitioners) obtained a stay at Special Term.  This court, one Justice dissenting, modified to permit the examination to go forward but stayed the promulgation of any list or proposed acceptable answers.  The dissenting Justice would have denied the stay entirely at that stage of the proceeding (*Matter of Maye* v. *Lindsay*, 37 A D 2d 803).

The proposed Aide (Model Cities) is a position with a starting salary of $5,750 per year and a maximum salary of $6,750. The duties in each category are fairly well defined.  They do not include law enforcement or fire fighting authority.  It is contemplated that at the end of six months the Aide will take or become eligible to take a promotion examination for Patrolman (Model Cities) or Fireman (Model Cities), etc.  They are not promoted to any regular title in any of the services, but solely to an M.C. title.  In neither instance does the Aide become a regular member of the force, nor is his salary paid from city funds.

It is requisite that each applicant for the title of Aide (M.C.) be a resident " of a Model Cities area at the time of filing and must continue to reside in the same Model Cities area during the period of employment in a Model Cities title."  Three Model Cities areas were designated by New York City.  They are low-income areas, the population of which is either largely black or Puerto Rican or a combination of both.  The program is designed to assist young men (ages 16 to 27) in the areas to become Aides in the three categories.

The Model Cities Program, which is funded by Federal funds and supplemental grants, which, incidentally, may or may not

be available, seeks to upgrade the total environment of the slum or blighted neighborhoods selected, and to afford to its residents " maximum opportunities for jobs in the projects and activities of the program." The authority for, purpose of and scope of the program is found in chapter 41 of title 42 of the United States Code (U. S. Code, tit. 42, §§ 3301–3313).

The cities engaging in the program are required to plan, develop and carry out comprehensive city demonstration programs in accordance with the purposes of the statute. The Secretary of Housing and Urban Development (HUD) is authorized to make grants and provide technical assistance to enable them to do so. The demonstration program becomes eligible for assistance if " substantive local laws, regulations, and other requirements are, or can be expected to be, consistent with the objectives of the program (U. S. Code, tit. 42, § 3303, subd. [a], par. [4]).

Petitioners attacked the residency requirement as violative of the statutes and Constitution of the State of New York. The statutes upon which petitioners rely exempt policemen and firemen from residency requirements (Civil Service Law, § 23, subds. 4-a, 4-b; Public Officers Law, § 3, subds. 1, 2, 4 and 9; § 30, subd. 4). Petitioners further attack the program as violative of section 6 of article V of the New York State Constitution which requires appointments and promotions in the civil service to be by competitive examination. Special Term upheld petitioners and concluded that Congress has not excused compliance with what it concluded to be controlling provisions of State law. Special Term also invalidated the examination. Respondents appealed from the judgment entered.

The residency requirement applies only while the Aide is in an M.C. title. If successful in passing the initial examination and becoming an Aide (M.C.), the applicant can remain in that title a maximum of 15 months. In that period he must either successfully pass a second examination to policeman (M.C.), etc., or his employment is terminated. If successful, the applicant has taken two examinations and is not yet a policeman, fireman or Housing Authority patrolman. No program now exists for him to become such.

The fact is that the proposed Aides (M.C.) are not and may never become policemen, firemen or Housing Authority patrolmen. Essentially, in this respect, petitioners urge, and Special Term agreed, that the Aide (M.C.) is a preparatory step to becoming one of the foregoing. As noted earlier, when, as and if an Aide ever became a regular fireman or policeman the resi-

dency requirement now applicable to an Aide would not apply. Petitioners are complaining before they are hurt. Their present action is premature. Certainly they are not now aggrieved. Nor is it shown that someone outside of the areas in question who fits the stated requirements, exclusive of residence, was denied any right to which he was entitled. The argument here is premised on anticipatory harm.

Aides (M.C.) are just what the word implies. They are persons designed to assist in the performance of certain tasks. They are not to be armed or fight fires, and they are without the authority which the regular position carries. The provisions of the statute permitting and financing their creation are reasonably related to the express and desired goals. At this point they can hardly be considered competitive to the regular positions. They merely fill a need in a heretofore neglected area. Experimentation was and is warranted. Since the job categories created and the duties prescribed are completely different from any heretofore existing, the argument that they necessarily fall within the contemplation of the prohibitory statutes with respect to residency requirements, or the New York State Constitution with respect to competitive examinations, is of doubtful merit. We do not at this time pass upon any issue which might arise in the future when, conceivably, the lines of development merge.

In *Matter of Council of Supervisory Assns.* v. *Board of Educ. of City of N. Y.* (23 N Y 2d 458, 469) the court recognized and approved the "well-recognized power to create new positions for new needs" and to experiment in order to find solutions to urgent problems. Here, as in the cited case, there is no evasion of civil service requirements. The dire consequences envisaged by petitioners are not apparent. The judgment should be reversed, on the law, and the petition dismissed, without costs or disbursements.

CAPOZZOLI, J. (dissenting). I most certainly approve of the objectives of the Model Cities Program and it is laudable indeed that it seeks to afford the residents of blighted neighborhoods "maximum opportunities for jobs in the projects and activities of the program". The particular program, which has led to the institution of this suit, will provide fine opportunities for young men in the age bracket 16 to 27 to prepare for their futures and it should be legally supported. The difficulty which is presented does not arise from the program, it arises out of the obvious evasion by the City Civil Service Commission of the constitutional requirement of appointments on the basis of merit and fitness. To say to other young men in the same age bracket that they

cannot participate in this excellent program, because they do not live in a particular neighborhood is a complete abandonment of the principle of merit and fitness, discriminatory and unfair. It does not contribute to harmonious relations amongst the residents of our city and, indeed, is likely to create discord, dissension and unrest at a time when everyone is striving for peace and understanding.

Because of this and for all the reasons expressed by the trial court in its excellent opinion, I dissent.

NUNEZ and KUPFERMAN, JJ., concur with STEVENS, P. J.; CAPOZZOLI, J., dissents in an opinion, in which LANE, J., concurs.

Judgment, Supreme Court, New York County, entered on April 18, 1972, reversed, on the law, and vacated, without costs and without disbursements, and the petition dismissed.