Harold J. Hughes, J.
In this article 78 proceeding, petitioner seeks judgment restraining respondent Superintendent of the New York State .Police from appointing as State troopers four women whose grades on an open competitive examination were lower than his, and directing that appointments to existing vacancies be based solely on the scores achieved by peti- . tioner and others similarly situated on such examination.
On January 22, 1973, the Division of State Police announced that a competitive examination would be conducted on March 17, 1973 for candidates for appointment to the position of trooper. The examination was in two parts: a written exami *702 nation, given a relative weight of 65%, and a physical agility examination, assigned a relative weight of 35%. Petitioner duly applied for appointment, took both examinations, and was informed in July, 1973 that he had received a total score of 92.333 and had achieved a ranking of 270 on the eligible list.
Thereafter, Superintendent Kirwan announced that 130 troopers, including 5 women, would be appointed to existing vacancies on September 6, 1973 and begin training that day at the State Police Academy. Alleging that these proposed appointments were not being made solely on the basis of the ranking on the eligible list, petitioner commenced this proceeding by order to show cause temporarily restraining the Superintendent from .appointing any applicant with marks below petitioner’s on the eligible list.
Upon the return date, respondents’ answer admitted the selection for appointment to the position of State trooper of four women whose grades were lower than that achieved by petitioner. It was further .stimulated that the last male tendered an appointment ranked 269 on the eligible list, so that, had selection been made solely on the basis of scores achieved in the competitive examination, petitioner would have been offered an appointment.
All parties agree that section 6 of article V of the State Constitution requires the Superintendent of State Police to make appointments by open and competitive examination (Matter of Andresen v. Rice, 277 N. Y. 271; see, also, Executive Law, § 215).
Respondents allege that these four women were selected from the eligible list in the order of their competitive position even though certain males (including petitioner) had achieved higher grades pursuant to a determination of the respondent Superintendent in response to a need for female troopers for (1) search, transportation and interrogation of .female prisoners; (2) interview of female complainants and witnesses, particularly in cases where the presence of a male trooper might cause embarrassment or lack of co-operation; (3) undercover assignments in the field of major crimes; (4) special investigations, particularly in the fields of child abuse or neglect, sex crimes, or unlawful abortion.
The main issue to be decided is whether the appointment of the female troopers violates section 6 of article V of the State Constitution, which states, in part: “appointments and promotions in the civil service of the state and all of the civil divisions thereof * * # shall be made according to merit *703 and fitness to be ascertained, as far as practicable, by examination which, as far as practicable, shall be competitive”.
It is apparent that the Legislature has construed this section to allow the Department of Civil Service to limit eligibility for examination to one sex when the duties of the position involved relate to work of any kind, the nature of which requires sex selection (see Civil Service Law, § 50, subd. 7). Moreover, it has been held that it is within the permissible discretion of the members of a Civil Service Commission to hold one examination for both males and females, rather than to hold separate examinations (Matter of Hirschorn v. Falk, 10 Misc 2d 554, affd. 9 A D 2d 881).
It would appear to follow, therefore, that if there is a need for female State troopers to perform sex-related duties, women applicants may be appointed on the basis of their competitive rank inter se as they were in the present case; the appointment complies “ as far as practicable ” with the requirement of section 6 for Competitive examinations.
This conclusion does not conflict with the holding in Matter of Jackson v. Poston (40 A D 2d 19), cited by petitioner. In that case the court reaffirmed the principle that experience with race, religious or ethnic problems may be considered in evaluating an individual, for appointment or promotion to a civil service position. Such experience, however, must be shown to be reasonably related to job-performance ability. The court concluded that where an individual’s experience with a particular race, religious or ethnic group is a bona fide qualification for the position to be filled, such experience may be considered with constitutional impunity.
In attempting to apply the rationale of Jackson {supra), admittedly an analogous case, to the situation at bar, it might be said that sexual status per se may be considered in evaluating an individual for appointment to a civil service position if it can be shown that sexual status is reasonably related to job-performance ability.
Petitioner also contends that appointments to the State Police may not legally be made on the sole ground of sex, relying on section 296 of the Executive Law which forbids discrimination in employment based on sex, unless such sexual discrimination is based upon a bona fide occupational qualification. In New York State Div. of Human Rights v. New York-Pennsylvania Professional Baseball League (36 A D 2d 364, 367-368, affd. 29 N Y 2d 921), the Appellate Division quoted with approval the language of the Court of Appeals for the Fifth Circuit *704 in Weeks v. Southern Bell Tel. & Tel. Co. (408 F. 2d 228, 235): " We hold that in order to rely on the bona fide occupational qualification exception an employer has the burden of proving that he had reasonable cause to believe, that is, a factual basis for believing, that all or substantially all women would be unable to perform safely and efficiently the duties of the job involved. ’ ’
The Appellate Division (36 A D 2d 364, 368, supra) also examined the guidelines set down by the Equal Employment Opportunity Commission: “ Those guidelines have construed the bona fide occupational qualification exception very narrowly. They reject the proposition that an employer can refuse 1 to hire an individual based on stereotyped characterizations of the sexes.’ (Code of Fed. Reg., tit. 29, § 1604.1, subd. [a], par. [1], subpar. [ii].) According to the commission the exception is primarily to apply ‘ where it is necessary for the purpose of authenticity or genuineness * * * i.e., an actor or actress.’ (Code of Fed. Reg., tit. 29, § 1604.1, subd. [a], par. [2].)”
The issue to be determined, therefore, is whether the respondents have a reasonable and factual basis for asserting that the State Police are in need of female troopers. If the need exists, then the sexual discrimination which necessarily results in fulfilling that need is based upon a bona fide occupational qualification.
The answer and supporting affidavits allege that the four women whose grades were lower than petitioner’s were expressly selected on the basis of sex pursuant to a determination by respondent Superintendent that female troopers were required for the performance of four types of police activity.
The court agrees with petitioner’s argument that the Superintendent’s assertion that female troopers are specially needed for some of those duties has neither factual nor reasonable basis, and in part seems to be based on ‘ ‘ stereotyped characterizations of the sexes ’ ’. Thus this court cannot ascribe to the view that female troopers would be more qualified by virtue of their sex to interview female complainants and witnesses in sex crimes or family complaints. Nor can the court agree that female troopers would be more qualified than male troopers to transport and interrogate female prisoners. While it obviously is true that interviewing and interrogating women in certain situations will often require great sensitivity and perhaps empathy, it cannot be said as a general proposition that these qualities are inherent in women and lacking in men.
*705 On the other hand, it is equally clear that sexual status is reasonably related to the job-performance ability for some of the duties specified in the affidavit of the Deputy Superintendent. This court can take judicial notice of the fact that the searching of female prisoners would be better performed by female troopers. Nor can it reasonably be denied, that “for the purpose of authenticity or genuineness ” female troopers will be needed for undercover assignments. Undercover assignments to investigate episodes of purse snatching and unlawful abortion are just two examples of situations that would probably require a female undercover agent.
The affidavit of Deputy Superintendent Surdam attached to the answer directs the court’s attention to the increase in the number of females arrested by the State Police in the past several years on drug charges alone. The factual allegations contained in respondents’ answer being uncontroverted (see CPLR 7804, subd. [d]), this court finds that the Superintendent’s determination to seléct four women to become trooper^ was reasonable, that sexual status is reasonably related to job-performance ability in the present case, and that the sexual discrimination is based upon a bona fide occupational qualification.
The court, therefore, holds that the actions of respondents in failing to appoint petitioner and in appointing four women with lower competitive scores as State troopers do not violate section 6 of article V of the State Constitution; nor do the actions of the respondents constitute illegal employment discrimination so as to deny petitioner of equal protection and due process of law.
The petition is dismissed, without costs.