In the Matter of MICHAEL M. RUDDY, on Behalf of Himself and All Others Similarly Situated, Respondent, v WILLIAM G. CONNELIE, as Superintendent of New York State Police, et al., Appellants. (Proceeding No. 1.)

DANIEL VOGHT et al., Respondents, v WILLIAM CONNELIE, as Superintendent of New York State Police, Appellant. (Proceeding No. 2.)

Third Department, February 23, 1978

## APPEARANCES OF COUNSEL

*Louis J. Lefkowitz, Attorney-General (John Q. Driscoll* and *Ruth Kessler Toch* of counsel), for appellants.

*Arnold W. Proskin, P. C.,* for Michael M. Ruddy, respondent.

*Parisi, De Lorenzo, Gordon & Pasquariello, P. C. (Charles R. Harding* of counsel), for Daniel Voght and others, respondents.

*Barashick & Finley (John W. Finley, Jr.,* and *Michael Blinick* of counsel), for New York City Correctional Officers Lodge No. 4 of the Fraternal Order of Police, *amicus curiae.*

## OPINION OF THE COURT

KANE, J.

It was announced in July of 1975 that a two-part competitive examination would be conducted for the purpose of filling positions as troopers in the respondent Division of State Police. Those scoring highest on the written portion of the examination, which was assigned a relative weight of 65%, were to undergo a test of their physical performance, given a relative weight of 35%, and an eligible list of successful applicants would then be established from the composite scores thus obtained. Over 22,000 individuals participated in the written test and 4,000 proceeded to take the physical performance test. In June of 1976 some 3,600 candidates were ranked in order of their respective examination scores and were duly placed on a list of those eligible for appointment, but it was not until December of 1976 that budgetary approval was secured to appoint 50 new troopers. Shortly thereafter, enough Federal funding became available for an additional 50 troopers to police interstate highways and arterials.

However, instead of offering appointments to as many of those ranked highest on the eligible list as would fill this complement of troopers, respondents proposed to appoint only 75 candidates in that fashion. In order to further an avowed goal of procuring greater representation of certain minorities and women in the State Police, it was decided that the remaining 25 candidates would be obtained by separately appointing the 15 highest ranked "ethnic minority" eligibles

and the 10 highest ranked female eligibles without regard to their individual placement among all others so listed. Petitioners, who are on the list but are males belonging to none of the recognized ethnic groupings, objected to this procedure and commenced the instant article 78 proceeding contending that the appointment of 25 troopers in such a manner would violate constitutional principles. Special Term agreed and gave judgment directing the appointment of troopers solely on the basis of their ranking on the existing eligible list together with certain related affirmative relief in the event appointments had already been made in the form suggested. This appeal ensued.

Despite the relative low ranking of some of the petitioners on the eligible list, and the correspondingly remote likelihood of their eventual appointment should the present judgment be upheld, we note that each possessed standing to maintain these proceedings *(Matter of Burke v Sugarman,* 35 NY2d 39). Moreover, the record demonstrates that petitioner Ruddy could reasonably expect to be offered an appointment in the event of an affirmance. The instant judgment is not clearly phrased in terms of class relief, but since *stare decisis* would undoubtedly apply to appointments made from the existing eligible list, we need not discuss this procedural ambiguity and proceed to a consideration of the merits.

Although power to appoint members of the New York State Police is expressly granted to the Superintendent of State Police (Executive Law, § 215, subd 3), it is firmly established that he can exercise that authority only through the process of competitive examination in conformity with section 6 of article V of the New York State Constitution which states, in relevant part, that such appointments "shall be made according to merit and fitness to be ascertained, as far as practicable, by examination which, as far as practicable, shall be competitive" *(Matter of Andresen v Rice,* 277 NY 271). It is also well settled, however, that examination scores need not always constitute the sole basis for determining fitness and that some leeway must be accorded to the appointing authority in making final selections *(Matter of Cassidy v Municipal Civ. Sev. Comm. of City of New Rochelle,* 37 NY2d 526; see *People ex rel. Balcom v Mosher,* 163 NY 32). Since *Matter of Andresen v Rice (supra)* stands for the proposition that it is practicable to measure the fitness of potential troopers by competitive examination, and none dispute that

point, the narrow question is whether respondents may constitutionally depart from the apparent results of an examination to the extent of making appointments that allow a preference to ethnic minorities and females. The answer is no.

There has been no suggestion that the two-part examination procedure was inherently unfair or disadvantageous to ethnic minorities or women, and there has been no claim that such minorities or females are more fit than others to perform the duties generally assigned to a trooper. They may, as respondents say, be particularly useful in certain types of police work, but then others might also possess individualized characteristics beneficial to the furtherance of designated tasks and yet no special effort was made to identify and measure such desirable qualities in the examination as conducted. Consequently, there can be no assertion that the proposed appointment device is meant to rectify errors in the testing mechanism or to recognize superior talents previously overlooked. It follows that respondents' decision cannot be attributed to any belated design to further refine an evaluation of merit and fitness. Whatever the motivation, therefore, the instant proposal falls beyond those topics to which consideration is constitutionally limited by section 6 of article V of the New York State Constitution and must be enjoined *(Matter of Roske v Keyes,* 46 AD2d 366).

The parties have stressed concepts of equal protection under the terms of "affirmative action" and "reverse discrimination", and we are not unmindful of authorities that touch upon the permissibility of entertaining racial factors in hiring practices (see, e.g., *Matter of Council of Supervisory Assns. of Public Schools of N. Y. City v Board of Educ.,* 23 NY2d 458, mod 24 NY2d 1029; *Matter of Jackson v Poston,* 40 AD2d 19). Nevertheless, our decision does not reach the subsidiary issue of whether the means chosen by respondents to effect the goal of enhanced minority and female representation offends against equal protection principles. That question would be germane only if the proposed course of conduct did not so plainly exceed the standard requiring that fitness alone be conclusive.

The distinction drawn by the minority also merits brief comment. Respondents have not purported to limit certification from the eligible list to one sex in reliance on subdivision 2 of section 60 of the Civil Service Law; in fact, they have affirmatively pleaded that the Civil Service Law has no appli-

cation to their decisions insofar as appointments are concerned. Had respondents believed the nature of the work as a trooper required selection based on sex, the precondition for bringing that statute into play, it can scarcely be doubted that there would be any point in testing an individual who lacked such a basic sexual qualification. Here both males and females took part in the examination on an equal footing. Thus, respondents' use of a sexually mixed eligible list can only signify that the position of trooper is not one for which the work demands individuals of one sex.

The judgment should be affirmed, without costs.

MAHONEY, J. (concurring).

■ Since the Black, Spanish and female applicants were given preference purely on the basis of skin color, gender and ethnic heritage, I agree that their appointments were improperly made.

While I concur with Justice KANE that the resolution of the constitutional issue is despositive, I feel that additional comment with respect to examination content and selection of eligibles is necessary for future guidance in this developing area of the law.

Dictum in *Matter of Council of Supervisory Assns. of Public Schools of N. Y. City v Board of Educ.* (23 NY2d 458, 467) indicates that even where minority-related qualifications* (such as "experience with the race problem in relation to education") are clearly pertinent to a particular job, it would nevertheless be illegal to make appointments from the certified list directly on the basis of race. Rather, objective criteria must be incorporated into the civil service examination to test for minority-related qualifications. Of course, skin color and gender would be entirely objective criteria. But, absent a showing that color or gender in themselves would enhance fitness for the job, the Court of Appeals implied that a test directly gauging color or gender would be unconstitutional *(id.,* at p 467).

In the case at bar, the Division of State Police has not shown that cultural or social experience with minorities would aid troopers in their duties. Certainly, the law is not to be

---

* A "minority-related qualification" would be a bona fide occupational qualification which happens to be possessed in higher proportion in one race (or gender) than in the population at large.

enforced differently depending upon the subject's race or gender.

*Matter of Maye v Lindsay* (69 Misc 2d 276, revd 41 AD2d 127, revd on opn at Special Term 33 NY2d 552, cert den 414 US 1069) is instructive on this point. There, the court stated (69 Misc 2d, at p 285): "[T]he various civil service commissions of the State have power to define jobs and to state and test for the requirements for the jobs. But they cannot decide that what they wish to do is to give employment to particular persons or particular groups, *and fit the requirements for the jobs to those groups."* (Emphasis added.)

Aside from the question of whether the selection of State troopers could legally be made by giving consideration to race or gender, all the appointments challenged in the case at bar must fall. The race and sex criteria were added after the test was administered and after the Civil Service Commission had certified the eligible list to the Division of State Police. This ex post facto change in hiring criteria is entirely at odds with the purpose of the civil service system, and has been specifically declared illegal in an instance where Spanish-speaking applicants for Suffolk County Police Officer were given preference after an eligible list (established by an examination with no Spanish language test) had already been certified.

"[A]n attempt to impose other and further qualifications, not listed in the examination notice, after the certification of the list of eligibles is palpably improper and is not to be condoned (see *Matter of Williams v. Kennedy,* 1 Misc 2d 804, 806, affd. 5 A D 2d 826)." *(Matter of Roske v Keyes,* 46 AD2d 366, 369.)

This ex post facto aspect is particularly pertinent to the preference given to the female applicants. Even assuming that State trooper is the sort of position which subdivision 2 of section 60 of the Civil Service Law would allow to be filled on the basis of sex, improper procedure was followed herein. The statute authorizes the *Civil Service Department* to certify an all-female or all-male list of eligibles to the hiring authority in certain cases. The authority would then make appointments from the list in the orderly manner prescribed by section 61 of the Civil Service Law. Here, a sexually mixed list was certified, and the hiring authority unilaterally decided to give an arbitrary number of females preference.

If this procedural irregularity is overlooked, there is still the question whether subidivion 2 of section 60 applies to the

position of State trooper. The only case on point is *Matter of Button v Rockfeller* (76 Misc 2d 701), in which the court held that the Division of State Police is authorized by this provision to give preference to female applicants for trooper. The court did not address the point, present in that case as in this, that the Civil Service Commission certified a mixed list upon which the Division of State Police unilaterally imposed a sex criterion.

The interpretation of subdivision 2 made in *Button* would lead to unacceptable results. The statute should be interpreted to permit the Civil Service Commission to certify an *all-male* or *all-female* list when the need for a certain number of personnel of one sex or the other is established. This would prevent the hiring authority from preferring an arbitrary number of male or female candidates. If the Division of State Police believes that a certain number of females is needed for undercover or other work in which sex is a bona fide occupational qualification, it can establish a separate job classification for such duties. This view of the statute is supported by the phrase: "[The Civil Service Commission] may limit certification from an eligible list to one sex." (Civil Service Law, § 60, subd 2.) Only by certifying a sexually homogeneous list to fill a discrete number of positions can the purpose of the merit and fitness provision of the State Constitution be fulfilled.

LARKIN, J. (dissenting). We take differing views of the actions of the Appellate Division with respect to "ethnic minorities" and women. The Civil Service Law has long recognized the need to "limit certification from an eligible list to one sex when the duties of the position involved relate to the institutional or other custody or care of persons of the same sex, or visitation, inspection *or work of any kind the nature of which requires sex selection"* (Civil Service Law, § 60 subd 2; emphasis supplied). We are persuaded by the arguments of the appellants regarding the need of the division for more female troopers and find no constitutional objection to the appointment of the limited number of females in the manner in issue herein. As to the appointment of the 15 "ethnic minority" eligibles, however, we agree with the majority that the method used for their selection amounted to filling the positions on the basis of race—or ethnic background, an equally objectionable classification—in direct violation of the mandate of the Court of Appeals in *Matter of*

*Council of Supervisory Assns. of Public Schools of N. Y. City v Board of Educ.* (23 NY2d 458, mod 24 NY2d 1029). (See, also, *Matter of Jackson v Poston,* 40 AD2d 19.)

SWEENEY, J. P., concurs with KANE, J.; MAHONEY, J., concurs in a separate opinion; MAIN and LARKIN, JJ., dissent and vote to modify in an opinion by LARKIN, J.

Judgment affirmed, without costs.