Randall V. Coffill, Esq. Counsel, Port Jervis Housing Authority
You have asked whether the chairman of the Port Jervis Housing Authority is required to be a resident of the city.
The Port Jervis Housing Authority was established by special act of the State Legislature (Public Housing Law, § 521). It constitutes a "body corporate and politic" and possesses the powers and duties conferred upon municipal housing authorities by State law (ibid.). The territorial jurisdiction of a city housing authority is co-terminous with the territorial limits of the city (id., § 31).
Under sections 3 (1) and 30 (1) (d) of the Public Officers Law, a person is not eligible for appointment to nor may he retain a local office unless he is a resident of the political subdivision or municipal corporation of the State for which he is chosen or within which his official functions are required to be exercised. A
 "`local officer' includes every other officer who is elected by the electors of a portion only of the state, every officer of a political subdivision or municipal corporation of the state, and every officer limited in the execution of his official functions to a portion only of the state" (id., § 2).
The question is whether an officer of a housing authority falls within the definition of local officer and is, therefore, subject to the residency requirements of sections 3 and 30 of the Public Officers Law.
In Brennan v Housing Auth., 72 A.D.2d 410 (1st Dept, 1980), plaintiffs, housing authority police officers, challenged the validity of an order by the New York City Housing Authority police chief requiring, in accordance with section 30 of the Public Officers Law, that they establish residence in New York State and within certain designated counties or face dismissal. In a plurality opinion, two judges found that these officers are public officers subject to the provisions of sections3 and 30 of the Public Officers Law (Brennan, supra,
p 412). The plurality decided, however, that the Housing Authority was equitably estopped from imposing these residency requirements on the plaintiffs (Brennan, supra, p 414). In a concurring opinion, one judge found that the plaintiffs were not subject to sections 3 and30 of the Public Officers Law (Brennan, supra, p 415). The two dissenters determined that the plaintiffs were subject to sections3 and 30 of the Public Officers Law but found no basis for a finding of equitable estoppel (Brennan, supra, pp 418-419). The plurality and dissenting opinions based their finding that sections3 and 30 of the Public Officers Law are applicable to housing authority police officers on Matter of Maye v Lindsay (69 Misc.2d 276 [Sup Ct, Special Term, N Y Co, 1972], revd 41 A.D.2d 127
[1st Dept, 1973], revd "on opinion at Special Term" 33 N.Y.2d 552
[1973], cert den 414 U.S. 1069 [1973]).
Maye was an Article 78 proceeding to invalidate elements of New York City's Model Cities Program providing residents of Model Cities areas (designated areas within New York City) with preferential treatment in obtaining civil service appointments to the New York City fire department, police department and housing authority police force. The trial court found that in establishing the Federal program, Congress did not override any State statutes (Maye, supra, p 280). Next the court considered whether sections 3 and 30 of the Public Officers Law applied to these positions and whether the preferential appointment policy violated the terms of the statutes. The trial court found, without analysis, that sections 3 and 30 of the Public Officers Law apply to New York City firefighters, police officers and housing authority police officers and concluded that the Model Cities residency preference was inconsistent with the provisions of these sections (Maye, supra, pp 282-284). Unlike the Model Cities preference, the Public Officers Law permits a city officer to reside anywhere in the city. We note that there was no separate discussion of the application of these provisions to housing authority police. The court also found that the more restrictive residency requirements violated the constitutional and statutory civil service requirements for appointments based on merit and fitness (Maye, supra, p 284). The Court of Appeals reversed the Appellate Division order on the opinion at Special Term.
In our view, the chairman of the Authority is a "local officer" within the meaning of section 2 of the Public Officers Law. He is an "officer limited in the execution of his official functions to a portion only of the state". Based upon this statutory construction and the above decisions, we find that the chairman is subject to the residency requirements of the Public Officers Law.
We conclude that the chairman of the Port Jervis Housing Authority is a local officer subject to the provisions of sections 3 and30 of the Public Officers Law. He must, therefore, be a resident of the city at the time of his appointment and throughout his term of office.